1  MICHAEL JAY BERGER (State Bar # 100291)
   LAW OFFICES OF MICHAEL JAY BERGER
2  9454 Wilshire Blvd. 6th Floor
3  Beverly Hills, CA 90212-2929
   Telephone:    (310) 271-6223
4  Facsimile:    (310) 271-9805
5  E-mail:        michael.berger@bankruptcypower.com

6  *Proposed* Counsel for Debtor and Debtor-in-Possession,
7  Law Offices of Brian D. Witzer, Inc.

8                UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA
10
                 LOS ANGELES DIVISION
11

12  In re:                                )  CASE NO.: 2:21-bk-12517-NB
13                                         )
                                           )  Chapter 11
14  LAW OFFICES OF BRIAN D. WITZER,        )
    INC.,                                  )  **SUPPLEMENTAL DECLARATION
15                                         )  OF BRIAN WITZER IN SUPPORT OF
            Debtor and Debtor-in-Possession. )  DEBTOR LAW OFFICES OF BRIAN
16                                         )  D. WITZER, INC.'S MOTION FOR
                                           )  ORDER AUTHORIZING INTERIM
17                                         )  USE OF CASH COLLATERAL**
18                                         )
                                           )  Hearing Scheduled For:
19                                         )  Date:    April 27, 2021
                                           )  Time:    2:00 p.m.
20                                         )  Place:   Courtroom 1545[1]
                                           )           255 East Temple Street
21                                         )           Los Angeles, CA 90012
22                                         )
23                                         )
24                                         )
25                                         )
26
27
   _____
28  [1] Hearing will be held via ZoomGov and Audio. Please refer to Judge Bason's "Procedures for Telephonic
    and Video Appearances by going to: https://www.cacb.uscourts.gov/judges/honorable-neil-w-bason

                                     1

## **DECLARATION OF BRIAN D. WITZER**

I, Brian D. Witzer, declare and state as follows:

1.      I am the founder and owner of The Law Offices of Brian D. Witzer, Inc.,
the debtor and debtor-in-possession in the above-captioned matter (the "Debtor" or the
"Firm").  I have personal knowledge of the facts set forth below and if called to testify as
to those facts, I could and would competently do so.

2.      I make this supplemental declaration in support of Debtor's Emergency
Motion for Order Authorizing Interim Use of Cash Collateral (the "Motion").

3.      On March 29, 2021, the Debtor filed its Chapter 11 bankruptcy petition.
This is the Debtor's first voluntary bankruptcy petition filing.

4.      On March 31, 2021, the Court held a hearing on Debtor's Motion.  At the
conclusion of the hearing, the Court requested that I provide additional information
regarding some of the expenses outlined in Debtor's budget (the "Budget").  *See* Exhibit
"1" to the Motion.  Those expenses are the rent, litigation costs, contract attorneys,
outside driver, and automobile expense.  I will respond to each category as follows:

### *RENT*

5.      Debtor pays monthly rent in the amount of $14,420.00 for the office located
at 2393 Venus Drive, Los Angeles, California 90046 (the "Venus Property").  On January
23, 2018, I entered into a two-year lease for the Venus Property.  The lease was
scheduled to terminate on February 14, 2020.  On April 21, 2020, the lease was extended
to February 14, 2022 with the rent being $14,420.00.  Attached hereto as **Exhibit "1"** is a
true and correct copy of the Extension of Lease for the Venus Property.

6.      The Venus Property is my office.  I have my attorneys and support staff
working from this location.  It is essential that the Court approve Debtor's Budget and
allow the Debtor to pay the monthly rent to the landlord.  Without the Court's approval,
the Debtor will be delinquent with its rent obligations and Debtor's operations will be in
serious jeopardy.

### *LITIGATION COSTS*

7.      Because I am in currently in a jury trial and away from my office (I am presently staying in a hotel in Bakersfield, California as the courthouse is located here in Bakersfield, California), I, unfortunately, have limited access to my files and, as such, I cannot, at this time, provide documentation to support some of the information that is stated in support of this category.  However, I am doing my best to provide the information that the Court seeks under these circumstances.

8.      Debtor's allocation of $100,000.00 for monthly litigation costs is justified.

9.      Between now and September 2021, I am engaged in several jury trials.  I am currently in trial before the Superior Court of the State of California, for the County of Kern in the matter styled, *Manuel Rodriguez v. Ken Small Construction, Ltd., et al.*, case number BCV-15-101757 (the "Rodriguez Matter").  Trial began on March 29, 2021 and it is expected to go through May 2021.

10.      In addition to the Rodriguez Matter, I have jury trials coming up in the following cases:

(1) On May 10, 2021, jury trial is scheduled to take place in the matter of *Alejandra Hernandez v. Adam Gabriel Oliveros, et al.*, case number CIVDS 1815754, filed in Superior Court of the State of California, for the County of San Bernardino (the "Hernandez Matter");

(2) On June 30, 2021, jury trial is scheduled to take place in the matter of *Mark Hannan v. Amy Diamond, et al.*, case number 19STCV09145, filed in the Superior Court of the State of California, for the County of Los Angeles (the "Hannan Matter");

(3) On July 23, 2021, jury trial is scheduled to take place in the matter of *Nathaniel Howard v. Clark Construction Group-California, LP, et al.*, case number PSC1901153, Superior Court of the State of California, for the County of Riverside (the "Howard Matter"); and

3

SUPPLEMENTAL DECLARATION OF BRIAN WITZER IN SUPPORT OF DEBTOR LAW OFFICES OF BRIAN D. WITZER, INC.'S MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL

(4) Trial is likely to take place in the matter of *Christopher Trejo v. Johnson & Johnson, et al.*, case number YC058023, sometime in August 2021 or September 2021 (the "Trejo Matter").  A Final Status Conference is scheduled for April 8, 2021 and I anticipate the court will set a trial date for some time in August or September of 2021.

11.    All of these trials, like the Rodriguez Matter, are scheduled to last multiple weeks, even months as they are complex, tort litigation cases.

12.    In each of these cases, my clients have suffered catastrophic injuries and millions of dollars are sought on their behalf.  As such, I am required to hire experts to substantiate their claims who are charging the Debtor in the tens of thousands of dollars for their services.

13.    For example, for the Rodriguez Matter, the trial that I am currently engaged in, I have paid a $5,000.00 retainer to David L. McAninch, D.D.S.   Attached hereto as **Exhibit "2"** is a true and correct copy of the fee agreement with Dr. McAninch.  Dr. McAninch is scheduled to testify on April 26, 2021.  However, I have been informed by him that he requires another $10,000.00 before his testimony.  This payment has to be made to Dr. McAninch as Dr. McAninch is a crucial witness in the Rodriguez Matter.  Dr. McAninch provided $60,000.00 worth of dental work on my client's mouth.  He did a full mouth replacement for my client and inserted implants in my client's jaw, due to my client's injuries.

14.    I have also paid $4,500.00 to Karen Hatami, D.D.S. for her appearance in the Rodriguez Matter.  Dr. Hatami is a TMJ expert. Dr. Hatami is a percipient witness who treated my client's mouth and is scheduled to testify in this trial as well.

15.    Attached hereto as **Exhibit "3"** is a true and correct copy of the fee agreement with Broadus & Associates who are vocational experts.  I also paid Broadus & Associates a $4,500.00 retainer for their services in this case.

4

SUPPLEMENTAL DECLARATION OF BRIAN WITZER IN SUPPORT OF DEBTOR LAW OFFICES OF BRIAN D. WITZER, INC.'S MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL

16.     Additionally, I have hired the following experts in this case who charge at the following rates for a half day or full day appearance:

| Expert | Half Day | Full Day |
|--------|----------|----------|
| Scheinberg | $5,000 | $10,000 |
| Jacks | $3,500 | $7,000 |
| Gardiner | | $500/hr. |
| Epperson | $2,850 per half day | |
| Garcia | | $400/hr. |
| Contreras | | $1,000/hr. |
| McAninch | $3,000 | $6,000 |
| Broadus | $2,000 per half day | |
| Fisk | | $10,000 |
| Jabour | | $15,000 |
| Teetz | | $350/hr. |
| Kasimian | | $20,000 |

The fee schedule for these experts is attached hereto as **Exhibit "4."**   Dr. Kasimian requires $22,000.00 just to get him to come to court.  Debtor will also need to pay the neurologist, Dr. Epperson, $18,000.00 to get him to come and testify in the Rodriguez Matter, and $12,000.00 to psychiatrist Dr. Brian P. Jacks.

17.     Tomorrow, the expert from MEA Forensics, the accident reconstructionist firm, is scheduled to testify in the Rodriguez Matter. They are owed $18,000.00.

18.     I have paid $6,500.00 to Dr. Contreras from California Life Care Planning Association.  He too is a percipient witness who provided care to my client.

19.     I have paid $10,000.00 to an economist Edward Garcia from Phillips, Fractor & Company, LLC to testify about my client's financial well-being.  Specifically, his testimony is focused on loss of earnings, loss of earning capacity, loss of fringe benefits, loss of household services, and other matters.

SUPPLEMENTAL DECLARATION OF BRIAN WITZER IN SUPPORT OF DEBTOR LAW
OFFICES OF BRIAN D. WITZER, INC.'S MOTION FOR ORDER AUTHORIZING INTERIM USE
OF CASH COLLATERAL

20.      H. Ronald Fisk, MD, Ph. D. who has a private practice in Neurology in Los Angeles and has also been a physician at Cedars-Sinai Medical Center, since 1978, is scheduled to testify tomorrow in this case.  I have so far paid him $3,300.00 and he is requiring an additional $11,000.00 tomorrow.

21.      Additionally, I am paying $5,000.00 every week for a court reporter to be present during trial.  Attached hereto as **Exhibit "5"** is a true and correct copy of my e-mail communications with the Veritext, the court reporting service, where I agreed and have paid the $5,000.00 retainer.

22.      Civil jury trials with Veritext are billed at $1,390.00 a day plus the cost of the real-time to the judgment.  We are now in the second week of trial in the Rodriguez Matter.

23.      I have also paid a retainer of $15,000.00 to an audio and videography firm. Attached hereto as **Exhibit "6"** is a true and correct copy of the retainer agreement with On The Record. While the fee agreement initially called for a $30,000.00 retainer, I was able to negotiate a $15,000.00 retainer.  Given the length of trial, however, On The Record will surely exhaust the retainer and charge me an additional $15,000.00, at the very least.

24.      The litigation costs also include room and board for not just myself, but for my staff and the experts that I have hired to come and testify for the Rodriguez Matter. As mentioned above, the Rodriguez Matter is being heard in Bakersfield, California.  I have rented four (4) rooms at a local hotel, The Padre, for $150 per night.  Three members of my staff and myself are staying at this hotel.  I am also required to obtain a room for the audio and video technician.  Again, the Rodriguez Matter is scheduled to last through May 2021.

25.      It is my firm belief that the same charges that are being incurred in the Rodriguez Matter will be equal, if not more, for the other upcoming jury trials that are

SUPPLEMENTAL DECLARATION OF BRIAN WITZER IN SUPPORT OF DEBTOR LAW OFFICES OF BRIAN D. WITZER, INC.'S MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL

coming up. Again, the $100,000.00 monthly expenses for litigation costs are justified given the upcoming jury trials and the gravity of my clients' injuries and what is at stake.

### *CONTRACT ATTORNEYS*

26.    With the upcoming jury trials, I have hired two attorneys to help me prepare for these cases.  I pay each attorney $10,000.00 per month.  The first attorney is Terry Mix, Esq. who is located in San Diego, California and the other attorney is Kenneth Melrose, Esq.

### *OUTSIDE DRIVER*

27.    The $2,000.00 monthly expense for the outside driver that is allocated for in the Budget is also justified.  This driver is paid $25.00 per hour.  He drives clients to medical exams, doctor's appointments, carries boxes to court, drives me to court, takes expert witnesses to and from court, takes litigation material to and from the court, etc. He provides essential support to me and my staff, especially during trial, that is instrumental to our success.

### *AUTOMOBILE EXPENSES*

28.    In a similar vein, the $3,117.00 monthly expense for automobile expenses is justified.  The Debtor has a leased 2012 Mercedes Benz Bespoke Sprinter.  The monthly payment for the Sprinter is $1,362.18.  Attached hereto as **Exhibit "7"** is a true and correct copy of the lease agreement for the Sprinter.  We use the Sprinter for trial and to take clients to and from appointments.

29.    I also pay the lease payments for two of my employees' vehicles.  I will provide documentation to support this figure (the $3,117.00 figure). Again, given the time constraints and my geographic location, I do not have the documentation in hand to support this figure, at this time.  I will, however, provide this information prior to the hearing on April 27, 2021, and not just for this category, but for the above-mentioned categories as well, where needed.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on April 6th, 2021, in Los Angeles, California.

By: _____
Brian D. Witzer
Principal of The Law Offices of Brian D. Witzer, Inc.

SUPPLEMENTAL DECLARATION OF BRIAN WITZER IN SUPPORT OF DEBTOR LAW OFFICES OF BRIAN D. WITZER, INC.'S MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL

# EXHIBIT 1

DocuSign Envelope ID: E9FA5CBE-E79C-43D1-8ABF-E3C7786BE316





**EXTENSION OF LEASE**
(C.A.R. Form EL, Revised 12/19)

The following terms and conditions are hereby incorporated in and made a part of the Residential Lease
☐ other _____ ("Lease"),
dated _____*January 23, 2018*_____ , on property known as _____*2393 Venus Dr*_____
_____*Los Angeles, CA  90046*_____ ("Premises"),
in which _____*Brian Witzer*_____ is referred to as ("Tenant")
and _____*2393 Venus Trust*_____ is referred to as ("Landlord").

**Note to Landlord: If the Premises are subject to any rent increase cap under any state or local law, Landlord is strongly advised to seek counsel from a qualified California real estate lawyer, who is familiar with the law where the property is located, prior to using this form to modify any of the existing terms of the Lease.**

The terms of the tenancy are changed as follows. Unless otherwise provided, the change shall take effect on the date the Lease was scheduled to terminate.

1. **EXTENSION OF TERM:** The scheduled termination date is extended to _____*February 14, 2022*_____ (Date).
2. **Rent shall be $** *14,420.00* _____ **per month.**
3. **Security deposit shall be increased by $** _____ .
4. ☐ **Rent Cap and Just Cause Addendum (C.A.R. Form RCJC) is attached and incorporated into the Lease.**
5. **ADDITIONAL TERMS:** *1.  Rental increase from Feb 15th, 2020 to April 30th, 2020 in the amount of $1050 to be paid on or before next rental payment due date.*
_____
_____
_____

**By signing below, Tenant and Landlord acknowledge that each has read, understands, and received a copy of and agrees to the terms of this Extension of Lease.**

Tenant _____*Bo Wg/*_____  Date _____4/22/2020_____
*Brian Witzer*

Tenant _____  Date _____

Landlord _____*Gary McNelley*_____  Date _____4/21/2020 | 12:05 PM PDT_____
*2393 Venus Trust*

Landlord _____  Date _____

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

EL REVISED 12/19 (PAGE 1 OF 1)

**EXTENSION OF LEASE (EL PAGE 1 OF 1)**

# EXHIBIT 2

## David L. McAninch IV, DDS
### 207 2nd Street
### Buellton, CA 93427
**Phone: (805) 682-0933 • Fax: (805) 682-1727**

January 13, 2021

Brian D. Witzer, Esq.
The Law Offices of Brian D. Witzer, Inc.
2393 Venus Drive
Los Angeles, CA 90046

Re:     Rodriguez v. Ken Small Construction, Inc., et al

Dear Mr. Witzer,

Below please find my fee schedule and rates in accordance with my agreement to act as a expert/consultant in the above-referenced matter:

| | |
|---|---|
| Retainer Fee | $5,000.00 |
| Hourly Fee:  Consultation, Records Review, Report Preparation, Travel, Literature Search, Preparation for Trial/Deposition/Arbitration | $450.00/hr. |
| Deposition, Trial, Arbitration Late Cancellation <48 Hours' Notice | $3,000.00 |
| Deposition Appearance | $750.00/hr. |
| Trial or Arbitration Appearance | $3,000.00/Half Day<br>$6,000.00/Full Day |

A retainer of $5,000.00 is required. Thereafter, itemized billing will follow including lists of the documents, objects, videos, CDs, records, communication (phone, text, email, video chat), etc. that are reviewed with the time expended on each activity, rounding up to the nearest quarter of an hour.  Please notify me if you have any questions.

Sincerely,

David L. McAninch IV, DDS
Diplomate, American Board of Oral and Maxillofacial Surgery

# EXHIBIT 3

# Broadus  & Associates

## Disability Management Services

112 N. Harvard Ave. #221, Claremont, CA 91711
(909) 621-6316  Fax (909) 494-5443
Paul@BroadusAndAssociates.com
Federal Tax ID #95-4802421

### *RETAINER AGREEMENT FOR VOCATIONAL EXPERT SERVICES*

I agree to retain Paul Broadus as the designated vocational expert on the case of: _Manuel Rodriguez_

A check for $4500.00 is enclosed, which will cover all services as specified in this fee schedule. This is a flat fee, and not refundable in part or in full unless no work is needed, in which case a $450.00 referral fee will be deducted. If any services are required in addition to those listed in the fee schedule, authorization will be obtained in advance.

_Signature_ _BDWj_          _9/24/2020_ _Date_

_Brian D. Witzer, Law Offices of Brian D. Witzer_
Printed Name and Firm

**Employability Analysis**

$4500 total cost, payable in advance as a retainer.  This includes all of the following as needed:

- Meeting personally with the plaintiff
- Telephone contacts with the plaintiff, attorney, economist, doctors, therapists, or anyone who has relevant information to assist in the analysis
- Reviewing all relevant file materials such as employment records, school records, medical reports, depositions, interrogatories, tax or earnings data, etc.
- Researching the requirements of past employment to develop a profile of abilities
- Performing a detailed transferable skills analysis
- Analyzing the effect of any injuries or disabilities on the plaintiff's ability to work
- Researching any employment options that might fit within residual capabilities
- Establishing current government wage data for those selected occupations

**Additional Work\*\***

| | |
|---|---|
| Brief Mediation Report | $500 flat fee |
| Full Report | $1,000 flat fee |
| Testimony (Trial, Arbitrations, Mediations) | $500/hour door-to-door ($2,000- ½ day minimum) |
| On-Call Fee | $500 flat fee |
| Depositions | $1000 minimum up to 2 hours + $500 per additional hour or part thereof |
| Travel | $325/hour (1/10th hour increments) |
| Additional Services as Requested | $325/hour (1/10th hour increments) |
| Interpreter (As Needed) | $225/session |
| Rush fee (report needed less than 30 days after retention) | $500 flat fee |

**\*\*Services rendered are in no way contingent on the outcome of the case, and payment is due within 30 days of completion of the work**

# EXHIBIT 4

G. Michael Phillips, Ph.D.

David T. Fractor, Ph.D.

Edward T. Garcia, M.S.
Robert K. Neff, CPA, ABV
Sean Chasworth
George Arzumanyan, CFA, CIMA®
Laurel Fish, M.S.



**PHILLIPS,
FRACTOR
& COMPANY, LLC**

ECONOMICS / STATISTICS / FINANCE
CONSULTING / RESEARCH / TESTIMONY
A Limited Liability Company

*Of Counsel*

Dennis Halcoussis, Ph.D.
William W. Roberts, Ph.D.
A. Lynn Matthews, Ph.D.
Craig Kerr, Ph.D.
William Ingersoll, Ph.D.
H. Drew Fountaine, CPA, Ed.D.

September 24, 2020

The Law Offices of Brian D. Witzer, Inc.
2393 Venus Drive
Los Angeles, CA 90046

RE:  Rodriguez  vs.  Willis, *et al*

Dear Counsel:

The rate for for Edward T. Garcia, M.S. is $400 per hour (rates are subject to change). This rate is applicable for all work provided by Mr. Garcia (e.g., consultation, analysis, travel, deposition, testimony).  The minimum for deposition is one hour.  The fee for canceling deposition is one hour.

Please make check payable to "Phillips, Fractor & Company, LLC".  Our firm's Tax ID number is 45-5551955.

Cordially,

PHILLIPS, FRACTOR & COMPANY, LLC

By:  Jeannie Wong, Case Coordinator

3452 East Foothill Blvd. Suite 220
Pasadena, California 91107-3154
T: (626) 744-3540 || O: www.Rule26.com



FEE SCHEDULE A

# Retained Expert Services

## <u>Life Care Planning</u>

| | |
|---|---|
| Designation Fee | $1,500 |
| Life Care Plan Retainer Fee | $6,500 |
| Life Care Planning Expert Services | $650/hour |
| Express Fee Additional | $100/hour |
| Expert Testimony (Deposition, Trial, Arbitration) | $1,000/hour |
| Administrative One-Time Fee | $500 |

## <u>Bill Review Bill</u>

| | |
|---|---|
| Review Retainer Fee | $6,500 |
| Bill Review Expert Services | $650/hour |
| Express Fee Additional | $100/hour |
| Expert Testimony (Deposition, Trial, Arbitration) | $1,000/hour |
| Administrative One-Time Fee | $500 |

15131 Triton Ln, Ste 109
Huntington Beach, CA 92649

(949) 933-4496
(888) 329-8480 fax
www.calilcpa.org

**MEDICAL IMAGING**
Center of Southern California

*Bradley A. Jabour, M.D.*
*CEO/Chief of Radiology*

# Medical Legal Fee Schedule for
# Bradley A. Jabour, MD
## CEO/Chief of Radiology

Expert Retention/Consultation
(in office or conference call)

$5,000 minimum up to 2 hours
$2,500 per added hour or increment thereof
Includes review of studies and verbal opinion

Expert Opinion/Written Report of Consultative Findings        $2,500

Exhibit Images for Deposition or Trial        $2500

Deposition (in office)        $5,000 up to 2 hours
$2,500 per added hour or increment thereof

Deposition (out of office)        $7,500 up to 2 hours
$3,000 per added hour or increment thereof

Court Appearance        $15,000 full day plus travel

*Payments are due up front for all services.*
Checks may be made out to: *Bradley A. Jabour.*

*2811 Wilshire Boulevard • Santa Monica • California 90403*
*(310) 829-9788 • Fax: (310) 829-3460 • www.micsc.com*

# Randall C. Epperson, Ph.D., ABPP

*Diagnostic Evaluation*                                                              *Medical/Legal*

### CLINICAL NEUROPSYCHOLOGY

Board Certified :   American Board of Professional Psychology/
American Board of Clinical Neuropsychology
American Board of Professional Neuropsychology

*liz.rcepperson@sbcglobal.net*                                        *Centralcalifornianeuropsychology.com*

**The Damrell Building, 1601 I Street, Suite 440, Modesto, CA 95354 (209)523-0999 Fax:(209)529-9671**

## FEE SCHEDULE

### PSYCHOLOGICAL/NEUROPSYCHOLOGICAL EVALUATION

-Comprehensive Neuropsychological Evaluation
  (Interview, Testing, Scoring and Interpretation)                 $4500.00

#### HOURLY RATES

-Record review                                                   $ 650.00/hr
-Report preparation                                              $ 650.00/hr
-Research                                                        $ 650.00/hr
-Graphic display preparation                                     $ 650.00/hr
-Pre-deposition and court testimony preparation                  $ 650.00/hr
-Testimony at deposition                                         $ 750.00/hr
-Trial testimony (court) half day or part of                     $2850.00

#### TRAVEL TIME                                                  $ 350.00/hr

#### OTHER

Retainer (½ non-refundable; not intended to cover full amount of fees)   $ 4500.00
Expedited evaluation or report (under 30 days)                   $  650.00
Late cancellation of evaluation (under 72 hrs)                   $ 1750.00
Late cancellation of deposition (under 72 hrs)                   $ 1500.00
Late cancellation of trial testimony (under 72 hrs)              $ 1500.00

Please make checks payable to:

Randall C. Epperson, Ph.D., ABPP
Tax ID No.: 943108005

Interest 12% per annum on unpaid balances after 60 days.

September 1,  2020



**Stepan Kasimian, MD, Orthopaedics and Spinal Surgery**

1101 East Broadway Blvd., Suite 201, Glendale 91205

818-500-9286 I 818-500-9272

---

## FEE SCHEDULE

UPON DESIGNATION, A RETAINER FEE OF $5,000 IS REQUIRED. THIS MUST BE RECEIVED BEFORE ANY MEDICAL RECORD REVIEW WILL BE INITIATED. **RETAINER FEE IS NON- REFUNDABLE**.

### DEPOSITION
PAYMENT DUE TWO WEEKS PRIOR TO DEPOSITION

| | |
|---|---|
| $2,000 per hour | $2,500 per hour on weekends |
| $2,500 per hour when videotaped | $3,000 per hour on weekends when videotaped |

There will be a $2,000 fee for any cancellation and rescheduling less than 72 hours from deposition date.

### COURT/ ARBITRATION
TO RESERVE A DATE FOR ARBITRATION TESTIMONY A $10,000 FEE MUST BE RECEIVED BY OUR OFFICE. TO RESERVE A DATE FOR COURT TESTIMONY A $20,000 FEE MUST BE RECEIVED BY OUR OFFICE. TRAVEL TIME GREATER THAN 1 HOUR WILL REQUIRE PAYMENT OF $200/HOUR. IF DR. KASIMIAN HAS TO FLY OUT FOR THE TRIAL, THERE MAY BE ADDITIONAL EXPENSES INCURRED WHICH WILL NEED TO BE ADRESSED PRIOR TO CONFIRMATION OF HIS TRIAL APPERANCE. DR. KASIMIAN CANNOT BE "ON-CALL" FOR ANY TESTIMONY SINCE HE HAS A FULL-TIME SURGICAL PRACTICE.  SCHEDULING COURT/ARBITRATION TESTIMONY REQUIRES CANCELLATION OF SEVERAL PATIENT APPOINTMENTS OR SURGERY, CAUSING SIGNIFICANT STRAIN ON THE PRACTICE OFTEN NECESSITATING THE PATIENTS TO BE RESCHEDULED. THEREFORE, IN THE EVENT THAT TRIAL OR ARBITRATION IS RESCHEDULED, CANCELLED, OR CONTINUED DUE TO UNFORESEEN REASONS LESS THAN TWO WEEKS FROM THE TESTIMONY DATE, 50% OF THE ABOVE FEE WILL BE NON-REFUNDABLE. IN THE EVENT THE TRIAL OR ARBITRATION IS RESCHEDULED, THE REMAINING 50% WILL BE APPLIED TOWARDS THE NEW DATE.  HOWEVER, AN ADDITIONAL 50% (TO COMPLETE THE TOTAL FEE IS REQUIRED FOR TRIAL/ ARBITRATION TESTIMONY) WILL NEED TO BE RECEIVED BEFORE THE NEW TRIAL DATE WILL BE RESERVED.


| | |
|---|---|
| **RECORD REVIEW** | $700 per hour |
| **EXPERT WITNESS MEETING** | $700 per hour |
| **EXPERT / IME CONSULTATION** | |
| Consultation | $1250 |
| Medical Report | $350 |
| No Show Appointment | $600 |
| **OTHER** | |
| Telephone Conference | $600 per half hour |
| Copy of Medical Records | $40 |

**Please sign below indicating you have received and agree to this fee schedule.**

---

**HANDLING ATTORNEY'S NAME**              **HANDLING ATTORNEY'S SIGNATURE**

---

**CASE**                                          **DATE**

**Brian P. Jacks, M.D., F.A.A.C.P.**

DIPLOMATE AMERICAN BOARD OF
PSYCHIATRY AND NEUROLOGY

PSYCHIATRY
9730 Wilshire Blvd.
SUITE 108
BEVERLY HILLS, CA 90212

TELEPHONE
(310) 274-0684
FAX
(310) 274-5049

FEE SCHEDULE AS OF JANUARY 2019

Expert fees for review of records, examination, preparation of reports and conference
Time...................................................................$ 600.00 per hour

Deposition Testimony.................................................$ 900.00 first hour
......................................................$ 700.00 each additional hour

Trial Testimony.................................................$ 3500.00 half day
.................................................. $ 7000.00 full day

Retainer Fee .................................................$ 2000.00 (Basic); $3000 (Complex)



Los Angeles ⋏ Vancouver ⋏ Toronto

# EXHIBIT A

## Fee Schedule

MEA Forensic charges a single rate per individual for all work, including field work, evidence examination, travel, client consultation, analysis, research, testing, report and exhibit preparation, and deposition/trial testimony. The minimum time increment is 0.1 hours. Travel times may be reduced if multiple cases can be combined on a single trip.

| Principals | Title | Hourly Rate |
|---|---|---|
| David King, BASc, PE | Senior Engineer | $500 |
| John Gardiner, PhD, PE | Senior Biomechanical Engineer | $500 |
| Dennis Chimich, MSc, PEng | Senior Biomechanical Engineer | $425 |
| Gunter Siegmund, PhD, PEng PE | Director of Research, Senior Engineer | $525 |
| Jonathan Lawrence, MASc PEng PE | President, Senior Engineer | $450 |
| Kurt Ising, MSc, PEng | Senior Engineer | $450 |
| Mark Bailey, MASc, PEng, PE | Senior Engineer | $400 |

| Associates | Title | Hourly Rate |
|---|---|---|
| Allen Yu, PhD | Biomechanist | $210 |
| Alyssa DeMarco, MS, PEng | Senior Biomechanical Engineer | $315 |
| Chris Espinosa, BA | Visual Communications Specialist | $200 |
| Cole Young, MS, PE | Project Engineer | $300 |
| Peter Cripton, PhD, PEng | Senior Biomechanical Engineer | $350 |
| Ross Hunter, PE | Project Engineer | $230 |
| Russell Gish, PhD | Senior Engineer | $325 |
| Ryan Fix, BSME, PE | Project Engineer | $250 |
| Shannon Kroeker, PhD, PEng | Biomechanical Engineer | $260 |
| Stephanie Bonin, PhD, PE | Senior Biomechanical Engineer | $325 |
| Steyn Visagie, PLS | Land Surveyor | $230 |
| Vickie Norton, BSME, MSc, ATP | Project Engineer | $400 |

| Support | Task | Hourly Rate |
|---|---|---|
| Engineers in Training | All tasks | $165 – $190 |
| Technologists/Technicians | Testing and instrumentation, drafting, exhibit preparation | $115 – $175 |
| Project Coordinator | File coordination, report and exhibit preparation, data gathering, research, test vehicle acquisition | $100 |

| Disbursements | Description | Rate |
|---|---|---|
| File management | File opening fee | $250 |
| Travel | Travel using personal auto | $0.75/mile |
| | Air, sea, train or rental car | At cost |
| | Meals | $75/day |
| Consultants, data, articles and couriers | | At cost |
| Faxes | | $1.00/page |
| Photocopies | Black & White | $0.25/page |
| | Color (8½" x 11") | $1.00/page |
| | Color (11" x 17") | $2.00/page |
| Report copies | | By the page |
| Vehicle and evidence storage | | By arrangement |

**Tax ID Number: 95-4658039**
Updated November 2019. Revised annually.

04/11/2019    16:36 Richard D. Scheinberg, MD                        (FAX)805 682 6394                    P.003/003



# SCHEINBERG ORTHOPEDIC GROUP

Richard D. Scheinberg, M.D.
*Medical Director*

Mark Jamali-Ashtiani P.A.-C
*Director of Physician Assistants*
Rudy Herrera N.P.

**Main Office**
401 Chapala St, Suite 102
Santa Barbara, CA 93101
(805) 682-1394
Fax (805) 682-6394

441 W. 5ᵗʰ Street
Oxnard, CA 93030
(805) 682-1934
Fax (805) 682-6394

530 E. Main St.
Santa Maria, CA 93454
(805) 682-1394
Fax (805) 682-6394

1914 Truxtun Avenue
Bakersfield, CA 93301
(661) 430-9050
Fax (661) 430-9053

## FEE SCHEDULE:

**IME**

**Retainer Fee:**

$3,500.00

**Record review, Examination, Preparation of report:**

$1,000 per hour

**Deposition Testimony:**

$1,000 per hour (Santa Barbara office only)

**Charges for late cancelations or no-show appointments**

$1,000 per hour

**Court Testimony:**

Half-day fee of $5,000.00 is required prior to services

Full-day fee of $10,000.00 is required prior to services

**Qualified Medical Examine**

$500.00 per hour

**Agreed Medical Examine**

$625.00 per hour

Depo $625 per hour

**Charges for late cancelations or no-show appointments**

AME/QME/PQME $325.00

**\*\*To avoid cancelation fee, appointment must be canceled 48 hours prior to scheduled
appointment\*\***

# EXHIBIT 5

**Brian D. Witzer**

| | |
|---|---|
| **From:** | Laura Wilson [calendar-woodrandall@veritext.com] |
| **Sent:** | Friday, April 02, 2021 9:30 AM |
| **To:** | Eric R. Canton; Brian D. Witzer; Kenneth Melrose |
| **Subject:** | Re: Rodriguez vs. Ken Small Construction |
| **Attachments:** | Veritext Credit Card Payment Authorization Form.pdf |

*Court Reporter*

Good Morning, I am emailing on the Rodriguez v Ken Small trial currently going forward. We will need to receive a retainer of $5000 for next weeks proceedings. I have reattached a copy of the credit card authorization form here.

—

**Laura Wilson**
Client Scheduling Manager
----------------------------------------------------------
**VERITEXT**
900 Truxtun Ave, Suite 320
Bakersfield, California 93301
**P** 800-322-4595
laura.wilson@veritext.com



On March 25, 2021, 12:47 PM PDT calendar-woodrandall@veritext.com wrote:

Dear Counsel,

It is our understanding that your office has offered to split the cost of the daily court reporting fees in the upcoming trial in the above-mentioned matter with the Offices of Clifford & Brown. If that is the case, we will need a retainer on file of $5000. We anticipate this will cover the first five days of trial. We are attaching a rate sheet for your information as well. Civil jury trials are billed at $1390 a day plus the cost of the realtime to the judge.

We look forward to hearing from you and getting this handled before the start of trial.

—

**Laura Wilson**
Client Scheduling Manager
----------------------------------------------------------
**VERITEXT**
900 Truxtun Ave, Suite 320
Bakersfield, California 93301
**P** 800-322-4595
laura.wilson@veritext.com

# EXHIBIT 6



**On The Record**

Los Angeles • San Francisco • New York

*The Trial Presentation
Professionals*

March 17, 2021                                                                <u>VIA EMAIL</u>

**Law Office of Brian D. Witzer**
Brian Witzer, Esq.
2393 Venus Drive
Los Angeles, CA 90046

*Re: Manuel Rodriguez v. Willis & KSI, Ltd.*

Dear Mr. Witzer,

We are delighted to have the opportunity to assist you in connection with the above-referenced matter. This letter confirms: (1) your engagement of On The Record, Inc. (OTR); and (2) the terms and conditions of your fee agreement with On The Record.

The following is our standard retention letter. Please review it and return a signed copy and the retainer described below.

All work performed by On The Record, Inc., whether initially committed to or subsequently requested by the client, is subject to the terms and conditions outlined in this letter, the estimate dated 3/17/21, and the OTR rate sheets dated 8/1/20. At On The Record, Inc. we perform all work requested on a time and material basis. For this reason, it is extremely difficult to provide you in advance with precise estimates of cost.

General Terms Applicable To This Retention

This agreement is made between On The Record (OTR) and Law Office of Brian D. Witzer (BW). BW agrees to perform its obligations under this agreement. The person signing this agreement on behalf of BW represents and warrants to OTR that she has the authority to enter into the agreement on behalf of BW and to bind BW to perform its obligations under the agreement.

In the unlikely event that sums payable under this agreement become the subject of controversy (except sums payable involving less than $5,000.00, which you agree to resolve in Small Claims Court in Los Angeles, CA) both sides agree that such controversy will be settled by binding arbitration in Los Angeles, CA, in accordance with the law of the State of California. The prevailing party shall be entitled to recover reasonable fees and costs. Additionally, in the event that any of the bills described herein are not paid within a reasonable time after the due date, OTR reserves its right to withdraw from this engagement regardless of the state of the matter and regardless of any event or proceeding which may be pending.



**On The Record**®

Los Angeles • San Francisco • New York

*The Trial Presentation
Professionals*

Both sides agree to waive any rights they may have to receive damages or indemnification on any theory of liability for special, indirect, consequential, or exemplary damages. This contract will be interpreted pursuant to the laws of the State of California.

All fees and expenses you incur will be billed on a monthly basis and are due and payable upon receipt of the monthly invoice. All outstanding fees and expenses must be paid upon delivery of final work product. If for any reason you ask that a final product not be provided, you will then be billed for all fees and costs incurred which must be paid at that time.

Credit will not be extended and a delinquency charge of one and one-half percent per month will be assessed on unpaid balances due more than sixty (60) days from the date of the statement. OTR's right to recover its fees and costs is in no way affected by the eventual outcome of the above-referenced litigation.

The terms of this retainer letter are valid for 10 business days from the date set forth above. If you have not returned the signed engagement letter along with the retainer within that time, we will assume that you do not intend to proceed with the case, and we will close the file. We will however still charge for all reasonable work and expenses incurred during this period.

The work on this project will include: "trial presentation development" - generally work done by On The Record; and "out-of-pocket expenses".

Terms Applicable To Trial Presentation Development

Trial presentation development includes work by individuals at OTR in such areas as case management, client meetings, graphic design and production, video editing, video synchronization, database management, file transfer/conversion, correspondence, phone conferences/calls, document imaging, production administration, non-courtroom as well as in-courtroom/arbitration technical support and equipment rental.

$15,000.00

We will require an advance retainer fee of $~~30,000.00~~ payable to On The Record, Inc. (Federal Taxpayer ID# 95-4569545) to commence production. This retainer will be held as a deposit applied to the first $30,000.00 in fees and expenses incurred on this project. Any remaining balance will be refunded at the end of this project. This retainer does not constitute an estimate of the overall cost of this project.



**On The Record**

Los Angeles • San Francisco • New York

*The Trial Presentation Professionals*

Terms Applicable To Out-of-Pocket Expenses

Out-of-pocket expenses including but not limited to travel (including meals), transportation, messenger services and production expenses shall be billed at cost.

All travel will be made by the most convenient route. Air travel will be made by coach class, as available. Automobile travel will be charged at the rate of $.58 per mile.

New rates may apply from time to time for any work done after March 1, 2022. We will send you a schedule of any such new rates a reasonable time before they apply. Unless you promptly notify us in writing that you do not agree to pay those rates, they will apply thereafter.

If you have any questions about the terms of this agreement, please do not hesitate to call. If this agreement is acceptable, please sign and return the enclosed copy of this letter as acceptance of the terms and conditions of our billing and production procedures and return the original along with the retainer check made payable to On The Record, Inc. as your authorization to commence work.

Confidentiality & Privilege

Throughout the course of this engagement, it may be necessary for BW to disclose confidential or privileged information to OTR to facilitate representation of its client. OTR hereby agrees not to disclose or reveal in any way all such confidential or privileged information, except (i) pursuant to a court order, rule, or other legal requirement, or (ii) if authorized by BW in writing to do so.

It is understood and agreed that all communications by and among OTR, BW, and/or its client during the engagement are intended to be confidential, are made in anticipation of litigation and may reflect the mental impressions, opinions, conclusions, and legal theories of BW. Such communications are protected by attorney-client privilege and the work product doctrine.



Thank you for calling on us.  We look forward to working with you.

Very truly yours,

Ken Kotarski
On Behalf of On The Record, Inc.

Accepted and Signed:

_____
(On Behalf of Law Office of Brian D. Witzer)

Date: _____3/19/2021_____

# EXHIBIT 7

DocuSign Envelope ID: DD642B61-4985-4E53-8B51-F338C1B31E20

THIS IS A COPY
of the enforceable Copy held
by the designative custodian

# COMMERCIAL OPEN END MOTOR VEHICLE LEASE AGREEMENT

**THIS LEASE AGREEMENT** is entered into **03-22-2019** between **PREMIER FINANCIAL SERVICES, LLC ("Lessor")** whose address is **47 Sherman Hill Road, Woodbury, CT  06798, and whose phone number is (203) 267-7700** and **Law Offices of Brian D. Witzer, Inc.   ("Lessee")** whose address is **2393 Venus Drive, Los Angeles, CA  90046** and covers the lease of the vehicle described below.  As used in this lease the words "you", "yours" or "your" refer to the lessee and "we", "our" or "us" refer to the lessor.

## 1. DESCRIPTION OF LEASED VEHICLE

| YEAR | MAKE | MODEL | | BODY STYLE | COLOR | | NEW/USED | VEHICLE ID NUMBER |
|------|------|-------|--|-----------|-------|--|----------|-------------------|
| 2012 | Mercedes-Benz | Bespoke Sprinter | | Van | Black | | Used | WDZPE8CCXC5668111 |

| PRIOR USE OF VEHICLE | PRIOR WRECKAGE | MILEAGE | CYL. | TRANS. | P. BRAKES | P. STEERING | A.C. | MSRP. |
|----------------------|----------------|---------|------|--------|-----------|-------------|------|-------|
| Personal | No | 30,833 | 6 | Automatic | Yes | Yes | Yes | Not Available |

**2. TRADE INFORMATION:**

| | YEAR | MAKE | MODEL | VIN |
|--|------|------|-------|-----|
| | NA | NA | NA | NA |

$0.00 Agreed Value (before debt)  -  $0.00  prior credit or lease balance  =  $0.00 Net Trade-In Value

## 3. DISCLOSURES

| **3.a. Amount Due at Lease Signing or Delivery:** (Itemized below)** <br><br> **$4,476.86** | **3.b. Monthly Payments:** <br> Your first monthly lease payment of **$1,362.18** is due on **3/24/2019** followed by **35** payments of **$1,362.18**  due on the **24th** of each month.  The total of your monthly payments is **$49,038.48**\*† | **3.c. Other Charges:** (not part of your monthly lease payment) <br><br> Off Lease Fee      **$495.00** <br><br> Total                    **$495.00** | **3.d. Total of Payments:** (the amount you will have paid by the end of the lease) **$52,648.16 †** <br> You will owe an additional amount if the actual value of the vehicle is less than the residual value. |
|---|---|---|---|

### Itemization of Amount Due at Lease Signing or Delivery

| **3.e.**\*\*Amount Due at Lease Signing or Delivery:** | | **3.f. How the Amount Due at Lease Signing or Delivery will be Paid:** | |
|---|---|---|---|
| i.     Capitalized Cost Reduction | $0.00 | i.     Net Trade in Allowance | |
| ii.    Tax on Capitalized Cost Reduction | $0.00 | ii.    Rebates and Noncash Credits | $0.00 |
| iii.   First Monthly Lease Payment (includes sales tax) | $1,362.18 | iii.   Amount to be Paid in Cash | $4,476.86 |
| iv.   Title, Registration and License Fees | $0.00 | | |
| v.    Refundable Security Deposit | $0.00 | **Total:** | **$4,476.86** |
| vi.   Document Processing Charge (not a governmental fee) | $0.00 | | |
| vii.  Acquisition Fee (includes sales tax) | $1,089.53 | | |
| viii. Supplemental Title Fee | $0.00 | | |
| ix.   Other (specify)Late Fees and Last Payment Owed: Courtesy Credit$2,025.15 | | | |
| **Total:** | **$4,476.86** | | |

### 3.g. Your Monthly Lease Payment is Determined as Shown Below:

| | | |
|--|--|--|
| i. | **Gross Capitalized Cost -** The agreed upon value of the vehicle ($50,495.00) and any items you pay over the lease term (such as taxes, fees, mechanical breakdown protection contract, insurance, service contracts and any outstanding prior credit or lease balance, all of which is itemized in section 4). | **$50,495.00** |
| ii. | **Capitalized Cost Reduction -** The amount of any rebate, cash payment, net trade-in allowance or noncash credit you pay that reduces the gross capitalized cost. | **$0.00** |
| iii. | **Adjusted Capitalized Cost -** The amount used in calculating your base monthly payment. | =$50,495.00 |
| iv. | **Residual Value -** The value of the vehicle at the end of the lease used in calculating your base monthly payment. | -$15,000.00 |
| v. | **Depreciation and Any Amortized Amounts -** The amount charged for the vehicle decline in value through normal use and for any other items paid over the lease term. | =$35,495.00 |
| vi. | **Rent Charge -** The amount charged in addition to the depreciation and any amortized amounts. | +$9,289.00 |
| vii. | **Total of Base Monthly Lease Payments -** The depreciation and any amortized amounts plus the rent charge. | =$44,784.00 |
| viii. | **Lease Payments -** The number of payments in your lease. | 36 |
| ix. | **Base Monthly Payment:** - 1st month @ $1,244.00 + 35 Monthly Payments @ | =$1,244.00 |
| x. | **Monthly Sales Tax** | +$118.18 |
| xi. | **Total Monthly Lease Payment** | =$1,362.18 |
| | **Rent and other Charges -** The total amount of rent and other charges imposed in connection with your lease. | $17,153.16 |

**3.h. Early Termination.** You may have to pay a substantial charge if you end this lease early. **The amount may be up to several thousand dollars. The actual charge will depend on when the lease is terminated.  The earlier you end the lease, the greater the charge is likely to be.**

**3.i.  Excessive Wear and Use. YOU MAY BE CHARGED FOR EXCESSIVE WEAR BASED ON OUR STANDARDS FOR NORMAL USE (SEE SECTION 14 BELOW) AND FOR MILEAGE IN EXCESS OF 7,500 MILES PER YEAR AT THE RATE OF $1.50 PER MILE. IF YOU ELECT TO PURCHASE THE VEHICLE AT THE END OF THE LEASE AND PAY THE AGREED UPON "RESIDUAL VALUE", YOU WILL NOT BE RESPONSIBLE FOR ANY EXCESS WEAR OR MILEAGE.**

**3.j.  Purchase Option at End of Your Lease Term.**  You have an option to purchase the vehicle "as is" at the end of the lease term if the lease is not in default for the sum of the "residual value" shown in paragraph 3.g.iv., a purchase option fee of $495.00(off lease fee) and applicable fees and taxes.

**3.k. Other Important Terms.**  See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance and any security interests, if applicable.

Page 1 of 7

© Premier Financial Services,LLC

THIS IS A COPY
of the authoritative Copy held
by the designated custodian

**4. ITEMIZATION OF GROSS CAPITALIZED COST**

| | | |
|---|---|---|
| a.1. | Agreed-upon value of vehicle as equipped at the start of the lease: | $50,495.00 |
| a.2. | Agreed-upon value and description of each accessory and item of optional equipment the Lessor agrees to add to the Vehicle after signing the lease: | |
| | i.    Not Applicable | +$0.00 |
| | ii.   Not Applicable | +$0.00 |
| | iii.  Not Applicable | +$0.00 |
| a.3. | Total Agreed Upon Value of Vehicle | $50,495.00 |
| b. | Taxes | +$0.00 |
| c. | Initial Title, License and Registration Fee | +$0.00 |
| d. | Service Contract | +$0.00 |
| e. | Maintenance Agreement | +$0.00 |
| f. | Document Processing Charge (not a governmental fee) | +$0.00 |
| g. | Outstanding Prior Credit or Lease Balance | +$0.00 |
| h. | Insurance Premium | +$0.00 |
| i. | Other (specify) _____ | +$0.00 |
| j. | Other (specify) _____ | +$0.00 |
| k. | Other (specify) _____ | +$0.00 |
| **l.** | **Gross Capitalized Cost** | **=$50,495.00** |

**Estimates based on current sales and use tax rates.  †Based on lease running full term.

The consumer lease disclosures we have included in this lease are also made on behalf of the lessor and its assignee, Signature Financial and Leasing LLC.  By signing this lease, you are leasing the Vehicle according to all terms of the lease.  The Disclosures in Section 3 are also terms of this lease.

**OTHER PROVISIONS**

Below memorializes trade-in, turn-in and other individualized agreements

If you are not in default you may elect to terminate this lease at any time prior to the scheduled lease end. If you elect to terminate the lease early, you may purchase the vehicle pursuant to Paragraph 15 of this Agreement.  To purchase the vehicle, you must pay the 'Balance' owed as of the date of early termination as set forth in the attached amortization schedule, plus a termination fee. The termination fee will be equal to one monthly lease payment. In addition, upon termination you must also pay the Off Lease Fee together with any monthly lease payments and late charges that are unpaid at the time of payoff/purchase and all other amounts that are incurred upon termination of the lease such as official fees and taxes imposed in connection with the lease termination. Upon receipt of the amounts due upon early termination we will transfer title to the vehicle as you direct.

**5. ESTIMATED OFFICIAL FEES AND TAXES**

You understand that the total of official fees, registration, title and taxes we expect you will have to pay during the lease term is **$4,254.48**.  Your taxes and fees obligations are described in paragraph 10.

**6. INSURANCE**

You agree to pay for and maintain during the lease term, and until the vehicle is returned to us, the following insurance on the vehicle, which has the following minimum coverages:

| | |
|---|---|
| **a. BODILY INJURY LIABILITY** | **$100,000/$300,000** |
| **b. PROPERTY DAMAGE LIABILITY** | **$50,000** |
| **c. COLLISION WITH MAXIMUM DEDUCTIBLE OF** | **$1000** |
| **d. COMPREHENSIVE WITH MAXIMUM DEDUCTIBLE (including fire and theft)** | **$1000** |

You understand that the policy must provide primary coverage for us and/or another party we specify as an Additional Insured on coverage a. and b. and for us or our assigns as Loss Payee on coverage c. and d. and must also provide all insureds with at least 10 days notice of cancellation or policy revision.  You will buy the insurance from an insurance company acceptable to us and will furnish us with whatever written proof of coverage we may require.

INSURANCE COMPANY'S NAME: _____

AGENT'S NAME: _____

AGENT'S ADDRESS AND PHONE NUMBER: _____ (_____) _____

INSURANCE VERIFIED BY: _____

POLICY NO. _____ BINDER NO. _____ EXPIRATION: _____ EFFECTIVE: _____

To the extent not prohibited by law, you grant us a limited power of attorney authorizing us to sign or otherwise execute, on your behalf, any loss proceeds check or other insurance disbursement obtained due to damage to the vehicle.

**7. PARTIAL INSURANCE PROCEEDS DEFICIENCY LIABILITY RELEASE**

As noted in paragraph 21, in the event of a casualty loss to the vehicle you will be obligated to pay any difference between the proceeds of your insurance and the total amount of your obligations under this lease.  By initialing below, you may agree to purchase our optional insurance proceeds deficiency liability release for **$N/A**. You realize that as an alternative to purchasing this release you may be able to purchase "Gap Amount" protection from a company authorized to do business in the state where the lease is signed.  If you purchase this release, we will partially waive any right to collect a deficiency in insurance proceeds from you in the event of casualty loss of the vehicle which is covered fully by your insurance policy.

You understand that this release does not cover the deductible and any other offsets your insurance company makes under the policy, including for mileage in excess of the then prorated portion of the mileage contemplated in paragraph 3.i., and that you will still be obligated to pay those amounts.  You also understand this release will not apply if an event not fully covered by your insurance policy, such as a confiscation, occurs.

a. You choose to purchase our insurance proceeds deficiency liability release and pay the price when you sign the lease.

**LESSEE INITIALS:  Not Applicable**

b. You choose to purchase our insurance proceeds deficiency liability release and have its cash price amortized in the monthly lease payments.

**LESSEE INITIALS:  Not Applicable**

**If you have not initialed a. or b., you have chosen not to purchase this release.**

**8. MECHANICAL BREAKDOWN PROTECTION**

While you have no obligation to do so, you understand that you may purchase from us a contract under which you will have the right to have a portion of the costs of repair of certain major mechanical breakdowns of the vehicle and some related expenses paid by the contract administrator listed in the contract. The term of this protection would be ___N/A___ years from the date the lease is signed or until the vehicle's odometer shows ___N/A___ miles, whichever happens first. If you have decided to purchase this protection you understand that a copy of the filled-in contract will be sent to you as soon as practicable.  You have chosen from the following option:

a. You choose to purchase our mechanical breakdown protection contract for the price of $___N/A___ and pay the price when you sign the lease.

© Premier Financial Services, LLC

THIS IS A COPY
certified Copy held

**LESSEE INITIALS:  Not Applicable**

b. You choose to purchase our mechanical breakdown protection contract for the price shown below and have its cash price amortized in the monthly lease payments.

**LESSEE INITIALS:  Not Applicable**

**If you have not initialed either a. or b., you have chosen not to purchase our mechanical breakdown protection contract.**

**9. VEHICLE WARRANTIES AND DISCLAIMERS**
You understand that unless otherwise indicated below the vehicle is subject to the manufacturer's new car warranty and you have those warranty rights. YOU ACKNOWLEDGE THAT YOU ARE LEASING THE VEHICLE "AS-IS" AND "WITH ALL FAULTS" AND ACCORDINGLY THAT WE MAKE NO EXPRESS WARRANTIES AS TO THE VEHICLE AND SPECIFICALLY DISCLAIM ANY IMPLIED WARRANTIES, INCLUDING THOSE OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE VEHICLE IS WITH THE LESSEE(S). IF YOU HAVE PROBLEMS WITH THE VEHICLE, WE WILL NOT BE RESPONSIBLE FOR THE REPAIRS, NOR WILL YOUR LEASE OBLIGATIONS BE AFFECTED.

**x** The standard written manufacturer's warranty. This warranty is made by the manufacturer and NOT by the Lessor.



**X LESSEE INITIALS:**
Initials- Brian David Witzer



**X LESSEE INITIALS:**
Initials-

**10. OFFICIAL FEES AND TAXES**
You agree to be responsible for the payment when due of all official fees and taxes (other than our net income taxes) imposed by any governmental authority in connection with the vehicle or this lease. We have estimated in paragraph 5 the total of official fees and taxes we expect you will have to pay during the lease term. You understand that the rates and amounts of such fees and taxes may increase during the lease term, and you agree to pay any such increased amounts.  You also understand there may be taxes and fees which you pay directly to the taxing authority and excise or similar taxes which are assessed during the lease term but are not due until afterwards and that you are liable for these amounts. We will bill you as required under applicable law for payment of property taxes. You must pay any applicable property taxes, regardless of whether the lease has terminated prior to billing or you have relocated.

**11. LATE PAYMENT CHARGE AND LATE RETURN**
If any monthly lease payment is not received by us within 10 days of its due date, a late charge of 5% of that payment will be imposed, which you agree to pay. You will pay a returned item charge of $27 for any check you give or other payment method you use which is not honored. In addition, if you do not return the vehicle to us at lease expiration, you will be liable for an additional monthly lease payment for each month or portion of a month you retain the vehicle, and your lease obligations will continue. You realize however, you have no right to retain the vehicle after lease expiration without our consent and that holding over is a default under the lease.

**12. LIENS AND CLAIMS**
You will keep this lease and the vehicle free from any liens, encumbrances or claims which we have not created under paragraph 24. You will hold us harmless and indemnify us for all liability, loss and expense arising from the use, condition or ownership of the vehicle, including any claim made under the vicarious or strict liability doctrine.

**13. VEHICLE USE AND MAINTENANCE**
You agree at your expense to have the vehicle serviced in accordance with the manufacturer's recommendations, to maintain the vehicle in good running order and condition and to have all necessary repairs made. Unless you obtain our written consent beforehand, you will not make any changes to the vehicle which would decrease its economic value or functional utility. Any changes made to the vehicle which cannot be removed without decreasing its economic value or functional utility will become our property when made. If we request, we may inspect the vehicle at any reasonable time. You understand that you are responsible for all operating expenses (for example, gasoline, and oil) incurred in connection with the use of the vehicle. You will not use or permit use of the vehicle: a. For any unlawful purpose or in violation of any law; b. By a person not having a valid driver's license or one who for insurance purposes is deemed an assigned risk or one who does not exercise reasonable care in its operation; c. For the transportation of persons for hire; d. Outside the state where you reside when you sign this lease for a period exceeding 30 days without our prior consent; or e. Outside the United States, without our prior consent.

**14. STANDARDS FOR WEAR AND USE**
The following standards apply for determining unreasonable or excess wear and use of the leased vehicle. You agree that when you return the vehicle to us, you will have properly maintained the vehicle, it will be in good running order and condition and will have, among other things, no less than 5 matching tires of equal quality to the originals (or 4 with emergency "doughnut" spare), with each tire having at least 1/8 inch of remaining tread at its shallowest point, and no chips, scratches, cracks, or other damage or defects in the glass, body, or interior beyond normal wear and tear. If at early termination it costs us more than $75 to put the vehicle in this condition, you promise to pay the difference, unless prohibited by law. At lease end you will pay any amounts in excess of $75 we pay or which would be required, based on a good faith estimate of a qualified repair facility or appraiser we select, to put the vehicle in this condition. You also recognize that if the vehicle suffered frame damage or substantial other damage or if its odometer has been inoperable or tampered with, even though the damage or odometer may have been repaired, the value of the vehicle will be substantially less than the value of an identical vehicle which has not had frame damage or suffered substantial other damage or had an inoperable odometer or one which was tampered with.  You understand that your obligations include this difference, and that you will be liable for the diminished value in the vehicle (beyond normal wear and tear) that results from such damage, an accident, or any other event or circumstance.

**15. OPTION TO PURCHASE LEASED VEHICLE PRIOR TO END OF LEASE**
You have the option to purchase the leased vehicle prior to the end of the lease.  See "Other Provisions" between Sections 4 and 5 of this agreement for terms of purchase prior to the end of the lease. You realize that this is a lease, and except for your right to possess and use the vehicle while you keep your promises under this lease, you have no ownership interest in the vehicle, its equipment, accessories or replacement parts unless you exercise the purchase option. Whether you purchase the vehicle during or at the end of the lease, the purchase will be on an "AS IS, WHERE IS, AND WITH ALL FAULTS" basis.

**ENDING THE LEASE**
**16. LEASE BALANCE**
In paragraph 19 the term "Lease Balance" is used to describe a component of respectively the purchase option price of the vehicle prior to the lease expiration and your potential liability in the event of early termination where you do not purchase the vehicle. At any time, the Lease Balance equals the adjusted capitalized cost shown in paragraph 3.g.iii. minus the depreciation portions of previously due monthly lease payments. The depreciation portion of a monthly lease payment equals the base monthly payment shown in paragraph 3.g.ix. minus the "lease charge" portion of the payments. The lease charge portion is calculated by multiplying the difference between (a) the adjusted capitalized cost and (b) the sum of the base monthly payment and the depreciation portions of the previously due monthly leases payments by (c) the constant rate which over the term of the lease reduces the adjusted capitalized cost to the residual value shown in paragraphs 3.g.iv. by subtracting the depreciation portions of all base monthly payments. These calculations assume a 360-day year of 12 months of 30 days each and that each payment is made in the scheduled amount and on the exact due date. These calculations follow the rules for journal entries for lessors as to "Direct Financing Leases" set forth in the Financial Accounting Standards Board's Standard No. 13.  Additional information regarding calculation of the Lease Balance appears in the "Other Provisions" box between paragraphs 4 and 5.  Pursuant to the "Other Provisions" and paragraph 19, if the lease is terminated early, you are obligated to pay a termination fee and an off lease fee, in addition to other amounts set forth in those sections.

**17. VEHICLE RETURN**
You understand that upon lease termination you must return the vehicle to the place we specify. You also understand that you must pay us your termination liability as calculated in paragraph 19 or 20 below, whichever is applicable.

**18. VEHICLE VALUATION TERMINATION**
Your early or end of term termination liability may be affected by the realized value of the vehicle. The realized value may be determined in one of the following ways:
a.  Within 10 days after return of the vehicle, you and we may enter into a written agreement as to the vehicle's value, or should you request it, you may obtain a professional appraisal of the wholesale value of the vehicle which could be realized upon sale made by a qualified person you find, who is acceptable to us as

© Premier Financial Services,LLC

THIS IS A COPY
COPY of the authoritative Copy held
COPY VIEW

well as to you. The expense for any such appraisal will be yours.

b. If the realized value is not determined as above, we may authorize the return of any vehicle, or we will attempt to obtain a bid to purchase the vehicle at wholesale for cash, if allowed by law, or to dispose of the vehicle in some other commercially reasonable manner. If we use a bid procedure, even though we may decide to not to sell the vehicle to any bidder, the highest bona fide bid received (which is supported by whatever proof of ability to pay we may require) will be considered the realized value of the vehicle. You understand that the realized value amount will be exclusive of any official fees and taxes imposed upon vehicle disposition.

**19. EARLY TERMINATION LIABILITY**

At any time after you sign this lease, you may terminate this lease. At any time after you sign this lease, we may terminate it if conditions as stated in paragraph 21 occur or this lease is in default as stated in paragraph 22.

You agree that, except as provided in paragraphs 7, 15, and 21, your payment liability upon early termination, if you surrender the vehicle, will be the sum of: (a.) a disposition fee of $495, plus; (b.) any monthly lease payments already due us which are unpaid and any other amounts arising from your failure to keep your promises under this lease; plus; (c.) the amount, if any, by which the Lease Balance exceeds the realized value; plus; (d.) any official fees and taxes imposed in connection with the lease termination (for example, sales/use taxes due on a deficiency balance under c.). In addition, you must pay termination fees as set forth in the "Other Provisions" box between paragraphs 4 and 5. The "Other Provisions" box also describes, along with paragraph 16, how the Lease Balance can be calculated for the purpose of establishing liability under (c.) of this paragraph 19, above.

**20. END OF LEASE TERMINATION LIABILITY**

You agree that your payment liability at the end of the lease term will be the sum of:

(a.) a disposition fee of $495; plus;

(b.) any monthly lease payments due us which are unpaid and any other amounts arising from your failure to keep your promises under this lease; plus;

(c.) if realized value shown in paragraph 3.g.iv. exceeds the realized value, the difference between the residual value and the realized value.

**21. DAMAGE, LOSS OR POTENTIAL LOSS OF VEHICLE**

You agree to be responsible for the risk of loss, damage or destruction of the vehicle during the lease term and until you return the vehicle to us. If the vehicle is damaged or destroyed in an accident or other occurrence or confiscated by any government authority or is stolen or is abandoned or is subject to undue peril, you will notify us of such occurrence or condition as soon as possible. If the vehicle is damaged and is in a condition which we believe is beyond reasonable repair, the lease will be terminated immediately. With respect to any other occurrence or condition included above, we reserve the right to terminate the lease immediately. If the lease is terminated, your termination liability will, unless otherwise provided in paragraph 7, be determined on the basis of an early termination. While any loss proceeds we receive from the insurance you provide will be credited to your termination liability, you also acknowledge your liability for any difference between the termination liability figure and the loss proceeds amount.

**22. DEFAULT**

If any information in your credit application or that of a guarantor of this lease is false or misleading or you fail either to make a monthly lease payment when due or otherwise to keep your promises under this lease or, to the extent not prohibited by applicable law, any other agreement you have with us (including, but not limited to, by defaulting on any other lease you may have with us), or if you or a guarantor becomes insolvent or dies, we can treat this lease as being in default. In the event of default, we may do any one or more of the following without giving you advance notice: **(a) take any reasonable measures designed** either to correct the default or to save us from loss, such as purchasing insurance to protect our interest if you fail to fulfill your obligations under Section 6 or paying any vehicle registration fees you have not paid directly as may be contemplated in Section 16, in which case you will pay us upon demand for the costs and expenses incurred; (b) terminate the lease and your rights to possess and use the vehicle; (c) take possession of the vehicle by any method or manner permitted by law; (d) determine your termination liability on an early termination basis which you agree to pay upon our demand; (e) recover from you interest at the rate of 18% per annum or at such lesser rate as may be provided for under applicable law on all expenses we incur and on all obligations you owe us after termination; and (f) pursue any other remedy permitted by law. You also agree to pay upon our demand all collections and legal costs, including reasonable attorneys' fees and court costs, we incur, to the extent not prohibited by law.

**23. MORE THAN ONE LESSEE**

If more than one lessee signs this lease, all lessees will be jointly and severally liable. You agree that we can waive or delay the enforcement of our rights as to one lessee without affecting our rights as to any other lessees. You also agree that we can release any lessee from his or her obligations without releasing any other lessees from their obligations.

**24. SECURITY INTEREST**

We reserve a security interest in the vehicle described herein to secure performance of your obligations under this lease. In order to protect our interest in the vehicle should any court determine that this Lease is not a true lease, you hereby grant us a security interest in the vehicle, together with all accessories, replacements and substitutions therefor or thereto and proceeds thereof, including without limitation any charges, proceeds of sale, exchange or other disposition of the vehicle, proceeds of any damage claim or insurance covering the vehicle, and the proceeds due or to become due from you, any sublessee or third party with respect to the vehicle. At our written request, you will execute and deliver to us any financing statement or other instrument required to perfect the foregoing security interest, and agree to pay or reimburse us for any searches, filings, recordings or stamp fees or taxes arising from the filing or recording of any such instrument or statement. You authorize us to manually or electronically file this Lease Agreement or any financing statements with respect to this Lease Agreement or the vehicle and to execute your name to any such financing statement. Any such filing shall not be deemed evidence of any intent to create a security interest under the Uniform Commercial Code.

**25. INSURANCE CLAIMS**

If any claim is made or action commenced for personal injury or death or property damage in connection with a vehicle, you shall promptly notify us and the insurer and furnish each with a copy of each process and pleading received in connection therewith and diligently defend against such claim or action and/or cooperate in the defense thereof. You shall promptly furnish to the insurer a report of any accident involving the vehicle on the form acceptable to such insurer.

**26. TAXES**

We will determine and pay the Federal Highway Use Tax ("FHUT") relating to the vehicle and will bill you for the FHUT paid. You will promptly reimburse us for all FHUT as an additional charge under this Lease Agreement. The Lease Charge excludes all sales and use taxes. You will pay, or reimburse us, as the case may be, for any sales and use taxes relating to the vehicle and any charges under this Lease Agreement. Subject to the preceding provisions with respect to the FHUT, you will determine and pay all fees, assessments, taxes and expenses whatsoever with respect to each vehicle and/or required by your business or resulting from your operation and use of the vehicle, including without limitation excise taxes, property taxes, overweight permits, mileage taxes, ton mileage taxes, fuel taxes, license fees and highway and bridge tolls. You will file all reports relating to such fees, assessments and tax.

**27. INSPECTION; FINANCIAL STATEMENTS**

During normal business hours, we and our authorized representatives may inspect each vehicle and the books and records of Lessee relative thereto, including without limitation, any leases, subleases and insurance records. We shall have no duty to make any such inspection and shall not incur any liability or obligation by reason of making or not making any such inspection. In addition, at our request, Lessee shall furnish us any financial statements of Lessee, including, without limitation, balance sheets and income statements. You will provide us with any information we request with respect to your use and operation of any vehicle.

**28. LESSEE'S WARRANTIES AND COVENANTS**

(a.) Lessee represents and warrants to Lessor that: (1) Lessee is and shall at all times hereafter be duly organized, validly existing and in good standing under the laws of the jurisdiction under which it is organized, registered or incorporated and it has duly authorized the execution, delivery and performance of this Lease Agreement; (2) This Lease Agreement has been duly and validly executed and delivered by Lessee and constitutes the valid and binding obligation of Lessee; (3) All financial statements presented to Lessor have been prepared in conformity with generally accepted accounting principles consistently applied, and fairly and accurately present Lessee's financial condition and income as of the date given, and since the date of such financial statements, there has been no material adverse change in the financial condition of Lessee or any other guarantor of Lessee's obligation hereunder; and (4) Lessee has read this Lease Agreement prior to signing. (b.) Lessee shall provide Lessor with at least 30 days prior written notice of a change to Lessee's (1) legal name, (2) state of incorporation, registration or organization, (3) social security number or tax identification number, (4) location of its chief executive office, or (5) type of business organization (such as, corporation, partnership, etc.). (c.) Without Lessor's written approval, Lessee shall not (1) sell, transfer or otherwise dispose of any of Lessee's interest in this entity in the ordinary course of business, (2) sell, transfer or otherwise dispose of Lessee's interest in this Lease Agreement, or the leased Vehicle; (3) consolidate with or merge into any other business entity or permit any other business entity to consolidate with or merge into Lessee, or (4) allow the sa... assignment, encumbrance or transfer to a third party of more than 20% of the voting stock, partnership interests or ownership interests

© Premier Financial Services,LLC

THIS IS A COPY
Verification of this copy of the authoritative Copy held
by the designated custodian

**29. GENERAL PROVISIONS**

You understand that: (a.) Our waiver or delay in requiring you to keep your promises or in enforcing our rights will not affect our ability to require you to keep your promises or to enforce our rights afterwards; (b.) We have no obligation to provide a replacement vehicle for any reason; (c.) Notices under this lease must be in writing, addressed to the appropriate party at the address shown above, and must be mailed by U.S. Mail, first class postage prepaid, and each party shall promptly notify the other of a change in address; (d.) Any changes to this lease must be in writing and signed by the party to be bound. (e.) YOU HAVE NO RIGHT TO ASSIGN AN INTEREST IN THE LEASE OR THE VEHICLE OR TO SUBLET OR LEND THE VEHICLE. You acknowledge that we may assign an interest in this lease or the vehicle and that if you receive notice of the assignment, you will acknowledge the notice and pay any assigned amounts specified in the notice as we have directed. You agree that no assignee is responsible for the performance of any of our duties under this lease unless the assignee expressly assumes the duties; (f.) You are responsible for ensuring the Vehicle is registered and inspected as and when required by applicable law; (g) Any security deposit shown in section 3(e)(v) will not be considered as rent, will not bear interest unless provided by applicable law and will not release you from any of your obligations to us, and we may at any time apply the deposit to the payment of your obligations to us; you will not be entitled to any increase to or profit on the security deposit; we may mingle the security deposit with any of our other funds, unless prohibited by law; we have no fiduciary obligation to you regarding the security deposit. We will return any remaining balance of the deposit after you have paid off your liability under this lease; (h.) We will have no liability for a failure or delay in delivering the vehicle or any other failure to perform our obligations related to the lease if caused by circumstances beyond our control. In no event will we be liable for consequential damages. Also, your obligations under this lease are independent and irrevocable. As a result, we will have no liability and your obligations will not be affected if the vehicle is damaged or does not work properly, or if any other occurrence which is not the direct result of our conduct affects your use of the vehicle; (i.) You waive any right to confidentiality of your address in any registration records related to the vehicle and authorize us and our assignee to obtain your address from those records to assist in the enforcement of this lease; (j.) If your credit has not been approved when you and we sign the lease as indicated above, we may rescind this lease on notice to you if your credit has not been approved within 10 days. In that case you will immediately return the vehicle to us at the place of delivery and will be liable for the cost of repair of any damage to the vehicle prior to the return; (k.) You will indemnify and hold harmless Lessor, its assignee and agents from any loss or damage to the Vehicle and its contents and from all other claims, losses, injuries, expenses and costs, related to the use, maintenance or condition of the vehicle. You will promptly pay all fines and tickets imposed on the Vehicle or its driver; (l.) If any term or provision of this lease shall, to any extent, be held invalid or unenforceable the remainder of this lease shall not be affected; (m.) You represent that your driver's license has not been revoked or suspended at the time of the execution of this Lease. Further, you will not allow anyone to drive this vehicle who is not lawfully authorized; and (n.) You give us power of attorney to execute in your name any proofs of insurance claims or losses regarding the Vehicle and to endorse your name on any related insurance settlement draft or check. (o.) **Electronic Records and Signatures.** You agree that we may use electronic records and electronic signatures to document this Lease Agreement and all subsequent documents and communications related to this lease. In such case, you agree to use electronic records and signatures. Your electronic signatures on electronic records will have the same effect as signatures on a paper document. They are legally binding and fully enforceable under the law. We may designate one authoritative copy of this contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. (p.) This lease will be governed by federal law and the law of the state of Connecticut, without regard to Connecticut choice of law or conflict of law or conflict of law principles.

**30. ARBITRATION AGREEMENT**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your lease application, lease or condition of the vehicle, your lease agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign your lease agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If the lease agreement has been terminated due to your default, notwithstanding anything to the contrary in this Arbitration Agreement, you must elect to arbitrate a claim or dispute within 30 days after termination of the lease agreement. We may, but are not required to, arbitrate a claim you make or dispute you raise more than 30 days after termination of the lease agreement due to your default. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. Your may choose one of the following arbitration organizations and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.arb-forum.com), or the American Arbitration Association, 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website. Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which your lease agreement was entered into, unless the arbitrator determines that location to be inappropriate. In the event the arbitrator determines that conducting the arbitration in the federal district in which your lease agreement was entered into is inappropriate, the arbitration will be conducted in the federal district agreed upon by you and us. If either party elects arbitration but fails to appear at any arbitration hearing or arbitration proceeding, that party agrees that the arbitrator shall enter a judgment by default against such party. You agree to pay your filing, administration, service or case management fee, arbitrator's fee, hearing fee and all other fees and charges, including your attorneys' fees (unless applicable law requires us to pay your attorneys' fees). If applicable law prohibits imposing these fees upon you, the arbitrator shall direct that we pay them. The arbitrator may also require that we pay any such fees in whole or in part if such payment by us is necessary to assure that this arbitration provision is enforceable. If the chosen arbitration organization's rules conflict with this Arbitration Agreement, then this Arbitration Agreement controls. The arbitrator's award shall be final and binding on all parties, except that if the arbitrator's award for a party is $0 or against a party exceeds $200,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party is responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Agreement shall be governed by the Federal Arbitration Act, and not by any state arbitration law. You and we retain any rights to self-help remedies including, but not limited to, repossession by any method or manner not prohibited by applicable law. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Agreement shall survive any termination, payoff or transfer of your lease. Paragraph 25k does not apply to this Arbitration Agreement; instead, the following two sentences apply. If any part of this Arbitration Agreement, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this arbitration clause shall be unenforceable.

BDW

© Premier Financial Services,LLC

THIS IS A COPY

... of the
... (authoritative Copy held
... by the designated custodian

TERMINAL RENTAL ADJUSTMENT CLAUSE (Internal Revenue Code § 7701 (h) STATEMENT FOR BUSINESS/COMMERCIAL LEASES)

You hereby certify under penalty of perjury that (a) you intend more than 50% of the use of the vehicle covered by this lease to be in your trade or business; and (b) you have been advised that you will not be treated as the owner of the vehicle for federal income tax purposes.



**X LESSEE INITIALS:**  *BDW*
Initials- Brian David Witzer

**X LESSEE INITIALS:** _____
Initials-

CONSUMER OR COMMERCIAL LEASE: You intend to use the vehicle (initial applicable box only):

Primarily for personal, family or household purposes

OR

**X LESSEE INITIALS:**    N/A

**X LESSEE INITIALS:**   __N/A__

Primarily for agricultural, business or commercial purposes

**X LESSEE INITIALS:**  *BDW*
Initials- Brian David Witzer

**X LESSEE INITIALS:** _____
Initials-

You have the right to return the vehicle, and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.

LES____    ____itzer, Inc.
By: *Brian David Witzer*
      D6E36C48728E4AA...    ____avid Witzer

GUARANTOR:
By: _____
              Signature -

**NOTICE TO THE LESSEE**
(1) Do not sign this lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled-in copy of this lease; (3) Warning - Unless a charge is included in this lease for public liability or property damage insurance, payment for that coverage is not provided by this lease.

BY SIGNING THIS LEASE, YOU AGREE TO ITS TERMS, INCLUDING THE ARBITRATION PROVISION, AND ACKNOWLEDGE THAT YOU HAVE READ THIS LEASE AND RECEIVED A COMPLETELY FILLED IN COPY BEFORE YOU SIGNED BELOW, ON THE DATE SET FORTH HEREIN.

**LESSOR:  Premier Financial Services, LLC**

By: _____
Name: _____
Title: _____  AA2A0327D13E424...

**LESSEE:** ____  V Brian ____er, Inc.
By: *Brian David Witzer*
      D6E36C48728E4AA...    ____avid Witzer

**Name of Guarantor: Brian David Witzer**

You agree to pay the lease obligation between the Lessor and Lessee named at the top of page 1 of this Open End Motor Vehicle Lease Agreement (the "lease"), although you may not personally receive any goods. You may have to pay this obligation even if the person who receives the goods is able to pay. This notice is not the contract that makes you responsible for the obligation. Read the lease (including the preceding five (5) pages) and the "Guaranty" section below for the exact terms of your obligation.

**GUARANTY:** To induce Lessor's execution of the lease and any Rider thereto, and in consideration of same, Guarantor absolutely guarantees full payment and due performance of Lessee's obligations under the lease and any Rider thereto: Guarantor consents to any modification or extension of the lease and any Rider thereto, waives notice of all modifications, extensions and defaults thereof, and acknowledges that the provisions of the lease are made a part hereof and are incorporated herein.

GUARANTOR: X *Brian David Witzer*
      D6E36C48728E...  - Brian David Witzer

GUARANTOR: X _____
                        Signature -

**Brian David Witzer**
Address:
2047 Sunset Plaza Drive
Los Angeles, CA 90069
310-777-5999

Address:

**DELIVERY RECEIPT**
You acknowledge that you have received and examined the vehicle described at the beginning of this lease, that the vehicle is equipped as described and in good operating order and condition and that you accept the vehicle for all purposes of the lease.

Date: _____3/22/2019_____

LESS____    ____itzer, Inc.
By: *Brian David Witzer*
      D6E36C48728E4AA...    ____avid Witzer

**Odometer Reading: 30,833**



DocuSign Envelope ID: D0B42B34-4885-4EE9-9DB1-F39BC4B62E20

THIS IS A COPY
A copy/scan of the authoritative Copy held
by the designated custodian

**Early Termination Amortization Schedule**   (as noted in  4. Other Provisions)

| Terms: | Purchase Price | $50,495.00 |
|---|---|---|
| | Down Payment | $0.00 |
| | Financed Amount | $50,495.00 |

| Monthly Payment Due Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|
| Loan | 03/22/2019 | 0.00 | 0.00 | 0.00 | 50495.00 |
| 1 | 04/21/2019 | 1244.00 | 338.15 | 905.85 | 49589.15 |
| 2 | 05/21/2019 | 1244.00 | 332.09 | 911.91 | 48677.24 |
| 3 | 06/21/2019 | 1244.00 | 325.98 | 918.02 | 47759.22 |
| 4 | 07/21/2019 | 1244.00 | 319.83 | 924.17 | 46835.05 |
| 5 | 08/21/2019 | 1244.00 | 313.64 | 930.36 | 45904.69 |
| 6 | 09/21/2019 | 1244.00 | 307.41 | 936.59 | 44968.10 |
| 7 | 10/21/2019 | 1244.00 | 301.14 | 942.86 | 44025.24 |
| 8 | 11/21/2019 | 1244.00 | 294.83 | 949.17 | 43076.07 |
| 9 | 12/21/2019 | 1244.00 | 288.47 | 955.53 | 42120.54 |
| 2019 Totals | | 11196.00 | 2821.54 | 8374.46 | |
| 10 | 01/21/2020 | 1244.00 | 282.07 | 961.93 | 41158.61 |
| 11 | 02/21/2020 | 1244.00 | 275.63 | 968.37 | 40190.24 |
| 12 | 03/21/2020 | 1244.00 | 269.14 | 974.86 | 39215.38 |
| 13 | 04/21/2020 | 1244.00 | 262.62 | 981.38 | 38234.00 |
| 14 | 05/21/2020 | 1244.00 | 256.04 | 987.96 | 37246.04 |
| 15 | 06/21/2020 | 1244.00 | 249.43 | 994.57 | 36251.47 |
| 16 | 07/21/2020 | 1244.00 | 242.77 | 1001.23 | 35250.24 |
| 17 | 08/21/2020 | 1244.00 | 236.06 | 1007.94 | 34242.30 |
| 18 | 09/21/2020 | 1244.00 | 229.31 | 1014.69 | 33227.61 |
| 19 | 10/21/2020 | 1244.00 | 222.52 | 1021.48 | 32206.13 |
| 20 | 11/21/2020 | 1244.00 | 215.68 | 1028.32 | 31177.81 |
| 21 | 12/21/2020 | 1244.00 | 208.79 | 1035.21 | 30142.60 |
| 2020 Totals | | 14928.00 | 2950.06 | 11977.94 | |
| 22 | 01/21/2021 | 1244.00 | 201.86 | 1042.14 | 29100.46 |
| 23 | 02/21/2021 | 1244.00 | 194.88 | 1049.12 | 28051.34 |
| 24 | 03/21/2021 | 1244.00 | 187.85 | 1056.15 | 26995.19 |
| 25 | 04/21/2021 | 1244.00 | 180.78 | 1063.22 | 25931.97 |
| 26 | 05/21/2021 | 1244.00 | 173.66 | 1070.34 | 24861.63 |
| 27 | 06/21/2021 | 1244.00 | 166.49 | 1077.51 | 23784.12 |
| 28 | 07/21/2021 | 1244.00 | 159.28 | 1084.72 | 22699.40 |
| 29 | 08/21/2021 | 1244.00 | 152.01 | 1091.99 | 21607.41 |
| 30 | 09/21/2021 | 1244.00 | 144.70 | 1099.30 | 20508.11 |
| 31 | 10/21/2021 | 1244.00 | 137.34 | 1106.66 | 19401.45 |
| 32 | 11/21/2021 | 1244.00 | 129.93 | 1114.07 | 18287.38 |
| 33 | 12/21/2021 | 1244.00 | 122.47 | 1121.53 | 17165.85 |
| 2021 Totals | | 14928.00 | 1951.25 | 12976.75 | |
| 34 | 01/21/2022 | 1244.00 | 114.96 | 1129.04 | 16036.81 |
| 35 | 02/21/2022 | 1244.00 | 107.39 | 1136.61 | 14900.20 |
| 36 | 03/21/2022 | 15000.00 | 99.80 | 14900.20 | 0.00 |
| 2022 Totals | | 17488.00 | 322.15 | 17165.85 | |
| Grand Totals | | 58540.00 | 8045.00 | 50495.00 | |

© Premier Financial Services,LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
9454 Wilshire Blvd., 6ᵗʰ Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **SUPPLEMENTAL DECLARATION OF BRIAN WITZER IN SUPPORT OF DEBTOR LAW OFFICES OF BRIAN D. WITZER, INC.'S MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 4/6/2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Proposed Counsel: Michael Jay Berger    michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
U.S. Trustee: Dare Law    dare.law@usdoj.gov
Interested Party: Samuel Price    sprice@pooleshaffery.com, mvalenti@pooleshaffery.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 4/6/2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/6/2021 | Peter Garza | /s/Peter Garza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**2. <u>SERVED BY UNITED STATES MAIL</u>:**

**Secured Creditors:**

Pravati Credit Fund III, LLP
c/o Chora Young & Manasserian LLP
Attn: Joseph Chora, Esq.
650 Sierra Madre Villa Ave. Ste 304
Pasadena, CA 91107-2141

Pravati Credit Fund III, LLP
c/o Fernald Law Group APC
Attn: Brandon C. Fernald, Esq.
510 W. 67th Street, Ste 700
Los Angeles, CA 90014

U.S. Business Administration
c/o Elan Levey, US Attorney's Office
300 N. Los Angeles Street
Fed. Bldg., Rm. 7516
Los Angeles, CA 90012

U.S. Small Business Admin
El Paso Loan Service Center
10737 Gateway West, Ste. 300
El Paso, TX 79935

U.S. Small Business Admin
312 N. Spring St. 5th Fl.
Los Angeles, CA 90012 (Address from POC)

**20 Largest Unsecured Creditors:**

Acosta & Associates LLC
600 West Germantown Pike, Suite 600
Plymouth Meeting, PA 19462

Alan G. Bassman, CPA
Bassman, Adelman & Weiss, P.C.
630 Sentry Parkway East, Ste 200
Blue Bell, PA 19422

Amicus Capital Group, LLC
26650 The Old Road, Suite 212
Stevenson Ranch, CA 91381

Brian D. Witzer
2393 Venus Drive
Los Angeles, CA 90046

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

City of Los Angeles
Office of Finance
200 North Spring St., Rm 101
Los Angeles, CA 90012


Harold Wrobel - Fazoula
14954 Corona Del Mar
Pacific Palisades, CA 90272

Leidy Yohana Witzer
2393 Venus Drive
Los Angeles, CA 90046

Mustang Funding LLC
120 Broadway Avenue South
Wayzata, MI 55391

The Solender Group
2516 Via Tejon #277
Palos Verdes Peninsula, CA 90274

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE