1  MONICA Y. KIM (SBN 180139)
2  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Ave.
3  Los Angeles, CA 90034
   Telephone:  (310) 229-1234
4  Facsimile:  (310) 229-1244
   Email: MYK@LNBYG.COM
5
6  Attorneys for Timothy J. Yoo, Chapter 7 Trustee

7              **UNITED STATES BANKRUPTCY COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9                  **LOS ANGELES DIVISION**

10 | In re: | Case No. 2:21-bk-12517-NB |
11 | | |
   | LAW OFFICES OF BRIAN D. WITZER, | Chapter 7 |
12 | INC., | |
13 |        Debtor. | **NOTICE OF MOTION AND MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSY WITH LEESEM, NEWSTAT & TOOSON LLP PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF TIMOTHY J. YOO** |
14 | | |
15 | | |
16 | | |
17 | | |
18 | | **Date: October 31, 2023** |
19 | | **Time: 11:00 a.m.** |
   | | **Ctrm: 1545** |
20

21 **TO THE HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTC JUDGE:**

22         Timothy J. Yoo, the chapter 7 trustee ("Trustee") for the bankruptcy estate of The Law

23 Offices of Brian D. Witzer, Inc., debtor herein ("Debtor"), hereby submits this *Motion for Order*

24 *Authorizing Compromise of Controversy with Leesem, Newstat & Tooson LLP Pursuant to*

25 *Federal Rule of Bankruptcy Procedure 9019* ("Motion").  In support of the Motion, the Trustee

26 submits the following memorandum of points and authorities and the attached Declaration of

27 Timothy J. Yoo ("Yoo Declaration").

28

                                   1

I.

**INTRODUCTION**

This Motion requests approval of compromise with the law firm of Leesem Newstat & Tooson LLP ("LNT Law") regarding the Debtor's lien and quantum meruit claims relating to LNT Law's representation of one client (which was the Debtor's former client) as follows:

(1)    _Lori Hoeft v. E&S Mangement Ring Corp., Marina Pacific Associates et. al_; bearing Case No. 19STVC23749 (Los Angeles County) (the "Hoeft Case").

The Debtor's records indicate that it prepared and filed the initial complaint, propounded and responded to discovery including taking and defending of depositions, prepared numerous communications with the plaintiff, defendants, and other witnesses including expert witnesses, prepared, filed and argued numerous motions, and performed certain other ordinary tasks associated with the prosecution of the Hoeft Case. After the Debtor closed its law firm, LNT Law substituted in as plaintiff's counsel and continued to prosecute the Hoeft Case. The primary attorney at LNT Law who handled the Hoeft Case was Jamal Tooson.

LNT Law has settled the Hoeft Case for $700,000 which has now been received. The contingency fee earned by LNT Law on account of the settlement is $211,000. The estate asserts liens and a quantum meruit claims (collectively, the "Quantum Meruit Claims") against the attorneys' fees and costs recovered by the plaintiff and/or LNT Law in the Hoeft Case. After extensive negotiations, the Trustee and the LNT Law have agreed to a settlement of the Debtor's Quantum Meruit Claims which resolves the disputes as to the relative roles and contributions that the firms played in the Hoeft Case. The Trustee believes the terms of the settlement are fair and equitable and in the best interest of the estate and within the sound business judgment of the Trustee.

II.

**BACKGROUND**

**A.    The Debtor's Bankruptcy Case**

On March 29, 2021 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor operated as a debtor in possession until July

11, 2022 when the Bankruptcy Court appointed a chapter 11 trustee to administer the Debtor's estate. Timothy J. Yoo was appointed to serve as the chapter 11 trustee.

The Debtor was a law firm founded by its principal, Brian D. Witzer, that handled tort cases in various legal areas such as multi-party pharmaceutical litigation, toxic mold exposure, traumatic brain injury cases, sexual assault cases, and complex catastrophic injury cases. The Debtor represented all of its plaintiff clients on contingency fee arrangements with recovery of out-of-pocket costs, with the Debtor's anticipated fee and cost recoveries subject to liens in favor of several creditors. The Debtor's standard retainer agreement also contained a provision whereby the client granted to the Debtor a lien upon the any sum received in the lawsuit to the extent of the fees and costs earned or advanced under the retainer agreement.

On November 29, 2022, the Trustee filed his motion to convert this case to chapter 7 largely due to the fact that the Debtor's principal, Brian D. Witzer, notified the Trustee that he intended to resign from the Debtor as of December 1, 2022, effectively leaving the Debtor without its primary lawyer to handle the remaining cases. The Court granted the motion to convert, and the case was converted to chapter 7 on December 19, 2022. Timothy J. Yoo was appointed to serve as the chapter 7 trustee.

Since the conversion, the Debtor's clients have engaged substitute counsel, and the estate has filed notices of charging liens in all of the Debtor's active cases as to the attorneys' fees and costs recoverable by plaintiffs' counsel. Several of these active cases have reached, or are close to reaching, settlements, or recovery on verdicts, and the Trustee is attempting to negotiate and compromise the estate's Quantum Meruit Claims as to the attorneys' fees and costs recoverable from the settlements or verdicts.

**B.    The Hoeft Case**

On July 8, 2019, the Debtor commenced the Hoeft Case on behalf of its plaintiff client. The retainer agreement with this client provides that the Debtor is to receive a certain percentage of the gross amount of any recovery (the "Contingency Fee"), reimbursement of all costs advanced, and a lien upon the lawsuit to the full extent of the Contingency Fee and all advanced costs. After the closure of the Debtor's law firm, LNT Law substituted in as counsel for the

plaintiff.

During the over 3 years that the Debtor prosecuted the Hoeft Case, the Debtor conferred and communicated with the parties and witnesses, investigated and researched causes of action, conducted discovery, pursued applicable motions, attended status conferences, and engaged in settlement discussions, and other tasks to prosecute the claims.

Since taking over the Hoeft Case, LNT Law obtained a settlement of $700,000 which has now been received. The Trustee is informed by Jamal Tooson that the Contingency Fee earned on the Hoeft Case is $211,000. Additionally, as to the Hoeft Case, the Debtor's records reflected that the costs incurred in connection with the Hoeft Case could have been more than $10,000, but not all costs could be verified as paid.

**C.**     **The Settlement Agreement With LNT Law**

LNT Law questions the validity, enforceability, and extent of the estate's Quantum Meruit Claims as to the fees earned and costs advanced in the Hoeft Case. After extensive negotiations, the Trustee and LNT Law have reached an agreement with respect to the estate's Quantum Meruit Claims and for the reimbursement of costs as to the Hoeft Case.  Based on their respective roles and contributions performed by the Debtor and the LNT Law, the Trustee, on behalf of the estate, and the LNT Law have agreed to allocate the Contingency Fee earned in the Hoeft Case and for the estate to be reimbursed costs that it advanced as follows:

(1)     Hoeft Case. The Trustee will receive $85,000 of the Contingency Fee (which equates to approximately 40% of the Contingency Fee) with an additional $5,000 recovery of costs, for total of $90,000.

Upon entry of an order approving this Motion ("Approval Order"), the Trustee shall provide LNT Law with a copy of the order, and LNT Law shall have the later of seven (7) business days after entry of the Approval Order or seven (7) business days after its receipt of the Contingency Fee to remit the estate's fees and costs in the total amount of $90,000 to the Trustee. Copies of the settlement agreement for the Hoeft Case is attached to the Yoo Declaration annexed hereto as **Exhibit A**.

## III.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.    The Court Can Approve the Settlement Agreement

The authority granting a debtor in possession the ability to compromise a controversy or agree to a settlement is set forth in Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), which provides in pertinent part that "[o]n motion by the [debtor in possession] and after hearing on notice to creditors . . ., the court may approve a compromise or settlement."  The decision of whether a compromise should be accepted or rejected lies within the sound discretion of the court.  *In re Carson*, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987); *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D.R.I. 1986); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr. D.Me. 1983).

The Ninth Circuit Court of Appeals has determined that, in considering a proposed compromise, the court must evaluate (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant to it; and (iv) the paramount interests of creditors and a deference to their views.  *In re A & C Properties*, 764 F.2d 1377, 1381 (9th Cir. 1986).  *See also In re Lion Capital Group*, 49 B.R. 163 (Bankr. S.D. N.Y. 1985); *Matter of Marshall*, 33 B.R. 42 (Bankr. D. Conn. 1983).

A court should not substitute its own judgment for the judgment of the trustee or the debtor in possession.  *Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D. N.Y. 1984).  "It is sufficient that, after apprising itself of all facts necessary for an intelligent and objective opinion concerning the claim's validity, the court determines that either (1) the claim has a 'substantial foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of the claim's litigation is 'doubtful'."  *Matter of Walsh Const., Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982).  A court, in reviewing a proposed settlement, "is not to decide the numerous questions of law and fact but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2nd

1   Cir. 1983), *accord, Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972).  The court should not

2   conduct a "mini-trial" on the merits of the underlying cause of action.  *Matter of Walsh Const.,*

3   *Inc.*, 669 F.2d at 1328; *In re Blairu*, 538 F.2d 849 (9th Cir. 1976).

4   **B.        The Estate's Lien And Quauntum Meruit Claims Have Merit**

5          "An attorney's charging lien is a security interest in the proceeds of the litigation."

6   *Fletcher v. Davis*, 33 Cal. 4th 61, 67, 90 P.3d 1216, 1219 (Cal. 2004) (internal quotation marks

7   omitted). "Under California law, the only way an attorney may acquire an attorney's charging

8   lien is by contract…. California law also makes it clear that an attorney's charging lien is

9   effective as soon as the contract that creates it is executed. No further step is necessary to

10  perfect it or to establish its priority as of the date of execution over subsequently created liens in

11  the same collateral. Thus, an attorney's charging lien is that rare creature: i.e., a legally

12  sanctioned 'secret lien.'" *Broach v. Michell (In re Bouzas),* 294 B.R. 318, 321 (Bankr. N.D. Cal.

13  2003) (internal citations omitted).

14         By definition, a charging lien can attach only to money or property recovered in the

15  litigation. *See, e.g., Hoover-Reynolds v. Superior Ct.,* 50 Cal. App. 4th 1273, 1277, 58 Cal.

16  Rptr. 2d 173, 176 (Cal. 1996) ("In California an attorney may ordinarily obtain a contractual

17  charging lien for fees enforceable against the recovery obtained in the lawsuit the attorney

18  prosecuted for his client.").

19         In *Day v. Alta Bates Medical Center*, 98 Cal.App.4th 243 (2002), the court outlined the

20  elements of a quantum meruit claim: "In order to recover under a quantum meruit theory, a

21  plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied*

22  *request* for such services from the defendant *and* that the services rendered were *intended to and*

23  *did benefit* the defendant. One court summarized the rule as follows: 'The theory of quasi-

24  contractual recovery is that one party has accepted and retained a benefit with full appreciation

25  of the facts, under circumstances making it inequitable for him to retain the benefit without

26  payment of its reasonable value.' (citation omitted, emphasis in original).  *Id.* at 250.

27         The *Day* court also stated: "The importance of the 'benefit' part of the rule was stressed

28  in a recent decision by one of our sister courts, *Maglica v. Maglica* (1998) 66 Cal.App.4th 442:

'The classic formulation concerning the measure of recovery in quantum meruit is found in *Palmer v. Gregg* (1967) 65 Cal.2d 657 661 56 Cal.Rptr. 97, 422 P.2d 985.  Justice Mosk, writing for the court, said: "The measure of recovery in *quantum meruit* is the reasonable value of the services rendered *provided* they were of direct benefit to the defendant." . . . the idea that one must be *benefited* by the goods and services bestowed is thus integral to recovery in quantum meruit; hence courts have always required that the plaintiff have bestowed some benefit on the defendant as a prerequisite to recovery.' (*Maglica, supra*, 66 Cal.App.4th at 449-450.)  "The second prong is that there must be either an explicit or implicit request for the services. As one court framed this requirement: 'A recipient of services performed either requested or acquiesced in them. . . .' Indeed, when the services are rendered by the plaintiff to a third person, the courts have required that there be a specific request therefor from the defendant: 'Compensation for a party's performance should be paid by the person whose request induced the performance.'" *Day*, 98 Cal.App. 4th at 248-249.

When a contingency attorney is discharged, the general measure of recovery is quantum meruit--the reasonable value of attorney's services rendered to the time of discharge. (Fracasse v. Brent, 6 Cal.3d 784, 790-792 (1972).) When a contingency attorney voluntarily withdraws, however, a quantum meruit recovery depends on whether the attorney had good cause to withdraw.  The Court in *Estate of Falco* provides that the withdrawing attorney has the burden of proving that:

- the withdrawal was mandatory under a statute or state bar rules,
- the primary motivation for the withdrawal was the obligation to adhere to these ethical imperatives,
- counsel commenced the action in good faith,
- subsequent to counsel's withdrawal the client obtained recovery, and
- counsel's work contributed in some measurable degree toward the client's recovery.

*Estate of Falco*, 188 Cal. App. 3d 1004, 233 Cal. Rptr. 807 (2d Dist. 1987).

**C.    The Settlement Is Fair and Reasonable**

The Settlement Agreement comports with the *A & C Properties* standards set forth above and is in the best interests of the Debtor's estate and creditors. The four factors, pursuant to *A & C Properties*, to be considered in reaching the aforementioned conclusion, are as follows:

1.    The probability of success in the litigation.

The Trustee believes that the estate has an excellent chance of prevailing in determining that the estate has a valid lien, pursuant to the terms of the pre-petition retainer agreement with the plaintiff, upon the Contingency Fee earned in the Hoeft Case, and recovery of all costs advanced by the estate. In addition, given the circumstances of the Debtor's withdrawal from the Hoeft Case, the Trustee believes that the estate has valid quantum meruit claims to the Contingency Fee earned in the Hoeft Case.   There can be no question that the Debtor commenced the Hoeft Case in good faith, and, subsequent to the Debtor's withdrawal, the plaintiff in the Hoeft Case obtained recovery. Having prosecuted the Hoeft Case for years prior to withdrawal, there can also be no question that the Debtor's work contributed in some measurable degree toward the plaintiff's recovery. The Debtor's withdrawal was also highly ethical and mandatory as it was the direct result of the resignation by Mr. Witzer from the Debtor which left the Debtor without any attorney to handle the Debtor's remaining cases. To avoid any further harm or delay to the plaintiff, the Trustee gave immediate notice to all of the Debtor's active clients that the Debtor would have to close its law firm, and also cooperated promptly with the plaintiffs to turn over case files. Under these facts and circumstances, the Trustee believes that the estate has compelling arguments as to the validity of its liens and quantum meruit claims against the Contingency Fee earned in the Hoeft Case and reimbursement of all advanced costs.

The Debtor filed the initial complaint, propounded and responded to discovery, corresponded with the clients, opposing counsel and witnesses, pursued motions, attending hearings and also pursued settlements. LNT Law resumed the Hoeft Case after substituting in as

the plaintiff's counsel and ultimately obtained a settlement. The Settlement Agreement considers the roles and effort put forth by the Debtor and the LNT Law in the Hoeft Case.  The Trustee submits that this factor weighs in favor of approving the Settlement Agreement.

       2.     <u>The difficulties in collection</u>.

The Trustee submits that this factor is neutral as the disputes between the estate and LNT Law involve recovery of funds that have already been received by LNT Law.

       3.     <u>The complexity of the litigation involved and the expense, inconvenience and delay attendant to it</u>.

This factor weighs strongly in favor of approving the Settlement Agreement. While the litigation with LNT Law may not be complex, the estate has limited money to continue to fund such litigation and will delay the administration of this case. There is no question that ongoing litigation with LNT Law will also be risky, inconvenient, time consuming, burdensome or non-existent. The Settlement Agreement avoids the risk, expense, inconvenience and delay attendant to any litigation and assures that the estate will have more money to pay to its creditors.

The Trustee negotiated the Settlement Agreements to minimize the risks and costs associated with possible litigation if the parties were unable to arrive at an equitable resolution. In the absence of a consensual resolution, the estate would have to litigate the quantum meruit claim for fees and costs.  Any litigation regarding the Quantum Meruit Claim could prove time-consuming and could require a significant expenditure of the estate's resources.  The Trustee believes that the upside is marginal even if the Trustee were to be successful in the litigation because the amount of the fees at issue is not substantial.

Moreover, no litigation is without risk. The Trustee evaluated the potential strengths and weaknesses of the estate's position in the litigation and negotiated the in an effort to maximize the return to creditors.  The settlements were entered into in good faith and was negotiated at arm's length. This factor supports granting of the Motion.

       4.     <u>The interests of creditors</u>.

Interests of creditors are best served by the approval of the Settlement Agreement. The Settlement Agreement is made with the economic purpose of limiting further litigation costs

and risks, while ensursing that the estate will have money to pay to creditors. This factor supports approval of the Motion.

## IV.

## CONCLUSION

For these reasons, the Trustee respectfully requests that the Court enter an order providing for the following relief:

1.      Granting the Motion;

2.      Authorizing the Trustee to enter into the Settlement Agreement;

3.      Approving the terms of the Settlement Agreement, a copy of which are attached to the Yoo Declaration as **Exhibit A**;

4.      Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Settlement Agreement; and

5.      For such other relief as the Court may deem just and necessary.

Dated:  October 10, 2023        LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.


By:     /s/ Monica Y .Kim
MONICA Y. KIM
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
Attorneys for Timothy J. Yoo, Chapter 7 Trustee

### DECLARATION OF TIMOTHY J. YOO

I, Timothy J. Yoo, hereby declare as follows:

1.     I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto. I am the duly appointed Chapter 7 Trustee of Law Offices of Brian D. Witzer, Inc. ("Debtor"). All capitalized terms used herein which are not otherwise defined shall have the meanings given in the Motion to which this Declaration is attached.

2.     On March 29, 2021 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor operated as a debtor in possession until July 11, 2022 when the Bankruptcy Court appointed a chapter 11 trustee to administer the Debtor's estate. I was appointed to serve as the chapter 11 trustee.

3.     The Debtor was a law firm founded by its principal, Brian D. Witzer, that handled tort cases in various legal areas such as multi-party pharmaceutical litigation, toxic mold exposure, traumatic brain injury cases, sexual assault cases, and complex catastrophic injury cases. The Debtor represented all of its plaintiff clients on contingency fee arrangements with recovery of out-of-pocket costs, with the Debtor's anticipated fee and cost recoveries subject to liens in favor of several creditors. The Debtor's standard retainer agreement also contained a provision whereby the client granted to the Debtor a lien upon the any sum received in the lawsuit to the extent of the fees and costs earned or advanced under the retainer agreement.

4.     On November 29, 2022, I filed my motion to convert this case to chapter 7 largely due to the fact that the Debtor's principal, Brian D. Witzer, notified me that he intended to resign from the Debtor as of December 1, 2022, effectively leaving the Debtor without its primary lawyer to handle the remaining cases. The Court granted the motion to convert, and the case was converted to chapter 7 on December 19, 2022. I was appointed to serve as the chapter 7 trustee.

5.     Since the conversion, the Debtor's clients have engaged substitute counsel, and the estate has filed notices of charging liens in all of the Debtor's active cases as to the

attorneys' fees and costs recoverable by plaintiffs' counsel. Several of these active cases have reached, or are close to reaching, settlements, and I am attempting to negotiate and compromise the estate's Quantum Meruit Claims as to the attorneys' fees and costs recoverable from the settlements.

6.      On June 25, 2019, the Debtor commenced the Hoeft Case on behalf of its plaintiff client. The retainer agreement with this client provides that the Debtor is to receive a certain percentage of the gross amount of any recovery (the "Contingency Fee"), reimbursement of all costs advanced, and a lien upon the lawsuit to the full extent of the Contingency Fee and all advanced costs.

7.      During the over 3 years that the Debtor prosecuted the Hoeft Case, the Debtor conferred and communicated with the parties and witnesses, investigated and researched causes of action, conducted discovery, pursued applicable motions, attended status conferences, and engaged in settlement discussions, and other tasks to prosecute the claims.

8.      Since taking over the Hoeft Case, LNT Law obtained a settlement of $700,000 which has now been received. I am informed by Jamal Tooson that the Contingency Fee earned on the Hoeft Case is $211,000. Additionally, as to the Hoeft Case, the Debtor's records reflected that the costs incurred in connection with the Hoeft Case could have been more than $10,000, but not all costs could be verified as paid.

9.      LNT Law questions the validity, enforceability, and extent of the estate's Quantum Meruit Claims as to the fees earned and costs advanced in the Hoeft Case. After extensive negotiations, LNT Law and I have reached an agreement with respect to the estate's Quantum Meruit Claims and for the reimbursement of costs as to the Hoeft Case. Based on their respective roles and contributions performed by the Debtor and the LNT Law, I, on behalf of the estate, and the LNT Law have agreed to allocate the Contingency Fee earned in the Hoeft Case and for the estate to be reimbursed costs that it advanced as follows:

(a)      <u>Hoeft Case</u>. The estate will receive $85,000 of the Contingency Fee (which equates to approximately 40% of the Contingency Fee) with an additional $5,000 recovery of costs, for total of $90,000.

10.    Upon entry of an order approving this Motion ("Approval Order"), I will provide LNT Law with a copy of the order, and LNT Law shall have the later of seven (7) business days after entry of the Approval Order or seven (7) business days after its receipt of the Contingency Fee to remit the estate's fees and costs in the total amount of $90,000 to me. A copy of the settlement agreement for the Hoeft Case is attached hereto as **Exhibit A**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of October 2023 at Los Angeles, California.

_____
TIMOTHY J. YOO

**EXHIBIT A**

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Agreement") is entered into by and between
TIMOTHY J. YOO, solely in his capacity as trustee ("Trustee") of the bankruptcy estate of Law
Offices of Brian D. Witzer, Inc. (the "Debtor"), and Lessem, Newstat & Tooson LLP ("LNT
Law").  The Trustee and LNT Law may hereinafter be referred to individually as a "Party" and
collectively as the "Parties."

## RECITALS

A.        On March 29, 2021 ("Petition Date"), the Debtor filed a voluntary petition
under Chapter 11 of the Bankruptcy Code.  The Debtor operated as a debtor in possession until
July 11, 2022 when the Bankruptcy Court appointed a chapter 11 trustee to administer the
Debtor's bankruptcy estate. Timothy J. Yoo was appointed to serve as the chapter 11 trustee.  On
November 29, 2022, the Trustee filed his motion to convert this case to chapter 7. The Court
granted the motion to convert, and the case was converted to chapter 7 on December 19, 2022.
Timothy J. Yoo was appointed to serve as the chapter 7 trustee.

B.        Prior to the Petition Date, the Debtor commenced an action in the Los
Angeles County Superior Court on behalf of plaintiff Lori Hoeft ("Plaintiff") against E&S
Management Ring Corp. ("Defendant").  The case is identified as Case No. 19STVC23749 (the
"Case").  The fee agreement provided that the Debtor was to receive a certain percentage of the
gross amount of any recovery (the "Contingency Fee").

C.        After the conversion of the bankruptcy case to Chapter 7, LNT Law
substituted in as counsel for the Plaintiff. LNT Law has since negotiated a settlement of the Case
for $700,000.  The Contingency Fee earned on account of the settlement is $211,000.

D.        The Debtor's books and records indicate that the Debtor incurred and/or
advanced costs prior to the substitution of attorneys in the Case from the Debtor to LNT Law.

E.        The Trustee and LNT Law have reached an agreement with respect to the
Estate's charging lien upon the Contingency Fee and quantum meruit claim (the "Quantum
Meruit Claim") and for the reimbursement of costs.

NOW THEREFORE, in consideration of the foregoing recitals and the mutual covenants,
conditions, promises, and agreements contained herein, and for other good and valuable
consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

# ARTICLE 1
## APPROVAL ORDER AND BINDING EFFECT

**1.1.    Binding Effect.**  This Agreement shall become effective and binding only upon entry by the Bankruptcy Court of a final order approving the Agreement (the "Approval Order"). The Approval Order is "final" after it is entered unless an appeal is timely filed and a stay pending appeal is obtained.  In the event of a timely-filed appeal and stay, the order shall become final if and when the appeal is resolved in favor of the Trustee.  In the event the stay pending appeal is lifted prior to the resolution of the appeal, the order shall become final upon the lifting of the stay pending appeal.  The "Effective Date" of this Agreement shall be the first business day after the Approval Order becomes final.

**1.2.    Court Approval.**  Upon execution of this Agreement by the Parties, the Trustee will promptly file a motion to approve this Agreement with the Bankruptcy Court.  The Trustee shall use his best efforts to obtain the Bankruptcy Court's approval of the motion and this Agreement, and the Parties shall cooperate in this regard and in defending against an appeal of the Court's approval of the Motion.

**1.3.    Termination of Agreement.**  In the event that this Agreement is not approved by the Bankruptcy Court with a final Approval Order, with the exception of Article I of this Agreement, this Agreement shall become null and void and of no force or effect.

# ARTICLE 2
## TERMS OF SETTLEMENT

**2.1.    Allocation of the Contingency Fee.**  The Contingency Fees earned by LNT Law shall be allocated as follows: The Trustee will receive $85,000 of $210,000 and LNT Law will receive $126,000 of $211,000.

**2.2.    Reimbursement of Costs.**  The Estate will receive an additional $5,000 from LNT Law as reimbursement for costs advanced in connection with the Case.

**2.3.    Payment.**  Upon entry of the Approval Order, the Trustee shall provide LNT Law with a copy of the Approval Order.  LNT Law shall have the later of seven (7) business days after entry of the Approval Order or seven (7) business days after its receipt of the Contingency Fee to remit the Estate's Fees and the Estate's Costs identified in Sections 2.1 and 2.2 above, in the total amount of $90,000, by check made payable to "Timothy J. Yoo, Chapter 7 Trustee of the Bankruptcy Estate of Law Offices of Brian D. Witzer, Inc.  Upon receipt in good funds, of the amounts identified in Sections 2.1 and 2.2 above, in the total amount of $90,000, the Trustee shall file a notice of withdrawal of the "Notice of Attorney's Charging Lien" filed in the Case. The check should include a reference to the case, *Hoeft v. E&S Management,* and be sent  to:

Levene, Neale, Bender, Yoo & Golubchik L.L.P.
Attention: Timothy J. Yoo, Trustee
2818 La Cienega Ave.
Los Angeles, California 90034

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES

**3.1.     No Undisclosed Inducements.**  The Parties represent that they have entered into this Agreement in reliance on their own investigation and that no representations, warranties, or promises other than those set forth in this Agreement were made by the Parties or their agents, employees, or counsel to induce either Party to enter into this Agreement.

**3.2.     Representation by Counsel.**  Each Party represents that he or she has obtained independent legal advice with respect to this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising therefrom.  The Parties acknowledge that they are executing this Agreement voluntarily, without any duress or undue influence.

**3.3.     Authority to Execute Agreement.**  The Parties warrant and represent that they are authorized to execute this Agreement on behalf of the respective parties and in their respective capacities as indicated below, provided however that the Trustee's execution of this Agreement is specifically subject to the approval of the Bankruptcy Court as provided for herein.

## ARTICLE 4
## RELEASE OF CLAIMS

**4.1.     Release of Claims by the Trustee.**  Except as otherwise provided in this Agreement, and effective only upon (a) approval of the Agreement by the Bankruptcy Court, and (b) receipt of the Estate's allocation of the Contingency Fee and reimbursement of agreed-upon costs, the Trustee, for and on behalf of the Estate and her successors (collectively, the "Releasing Parties") shall release and discharge LNT Law from any and all claims, demands, controversies, actions, causes of action, suits, proceedings, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature, or kind, in law or in equity, whether known or unknown, fixed or contingent, and liquidated or unliquidated, relating solely to the Case.

**4.2.     Release of Claims by LNT Law.**  Except as otherwise provided in this Agreement, LNT Law, for herself, itself and their respective successors, heirs, assigns, grantees, and affiliates (collectively, "LNT Law's Releasing Parties"), shall release and discharge any and all claims or interests which LNT Law's Releasing Parties may now own or hold, or may have previously owned or held, or may in the future own or hold, against the Trustee and the Estate and their respective agents, attorneys, and employees from any and all claims, demands, controversies, actions, causes of action, suits, proceedings, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and  damages of whatsoever character, nature, or kind, in law or in equity, whether known or unknown, fixed or contingent, and liquidated or

unliquidated, which relate solely to the Case.

## ARTICLE 5
## <u>GENERAL PROVISIONS</u>

**1.1.    Integration.**  This Agreement sets forth the entire agreement between the Parties with regard to the subject matter hereof and no change, modification, amendment, termination or discharge of this Agreement shall be binding unless made in writing and executed by each of the parties.  All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties with regard to the subject matter hereof, are contained in this Agreement and the documents referred to herein or implementing the provisions hereof.  No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party to another party with respect to the subject matter of this Agreement.  All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants and warranties with respect to the subject matter hereof are waived, merged herein, and superseded hereby and thereby.

**1.2.    No Third-Party Beneficiaries.**  This Agreement is not for the benefit of any person who is not a party signatory to this Agreement or who is not specifically named as a beneficiary in this Agreement, and the provisions of this Agreement are not intended to affect the rights of any party or non-party against any person or entity who is not a party signatory to this Agreement or who is not specifically named as a beneficiary in this Agreement.

**1.3.    Attorneys' Fees.**  With respect to any suit or proceeding involving the enforcement of this Agreement, including, but not limited to, instituting any action or proceeding to enforce any provisions of this Agreement, to prevent a breach of this Agreement, for damages by reason of any alleged breach of any provisions of this Agreement, or for a declaration of a Party's rights or obligations under this Agreement, the ultimate prevailing Party shall be entitled to recover from the losing Party or Parties, in addition to such other relief as may be granted, his/her reasonable attorneys' fees (other than the attorneys' fees and costs to prepare this Agreement and seek Bankruptcy Court approval of this Agreement).

**1.4.    Survival.**  It is expressly understood and agreed by each of the Parties that nothing provided for in this Agreement is intended to nor does it release any claims arising out of breach of this Agreement, or any representations contained herein or made in connection herewith.  All representations, warranties and covenants herein shall survive the execution of this Agreement.

**1.5.    Further Documentation.**  Following the date hereof, the parties must take such action and execute and deliver such further documents as may be reasonably necessary or appropriate to effectuate the intention of this Agreement.

**1.6.    Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be construed, interpreted and enforced in accordance with the laws of the State of California.

**1.7.    Jurisdiction.**  In the event a dispute arises under this Agreement, the Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce this Agreement.

**1.8.    Interpretation.**  This Agreement shall be treated as jointly drafted and will not be construed against any Party as drafter.  Furthermore, in the event of any ambiguity in or dispute regarding the interpretation of this Agreement, the interpretation will not be resolved by any rule of interpretation providing for interpretation against the Party who causes the uncertainty to exist or against the draftsperson.

**1.9.    Meaning of Pronouns and Effect of Headings.**  As used in the Agreement and attached exhibits, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires.  The captions and paragraph headings in the Agreement are inserted solely for convenience or reference and shall not restrict, limit or otherwise affect the meaning of the Agreement.

**1.10.    Counterparts and Electronic Signatures.**  This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original, but all of which together shall constitute one agreement.  A signature sent and received by facsimile or other electronic means shall constitute an original signature for purposes of this Agreement.  An electronic signature shall constitute an original signature for purposes of this Agreement.

**1.11.    Severability.**  In the event that any covenant, condition or other provision contained in this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, so long as such severance does not materially affect the consideration given or received herein or the general intent hereof.  If such condition, covenant or other provision shall be deemed invalid due to its scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent that the scope or breadth is permitted by law.

**1.12.    Waiver.**  No breach of any provision herein can be waived unless in writing.  Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.  No failure or delay on the part of any Party to exercise any right hereunder, nor any other indulgence of such Party, shall operate as a waiver of any other rights hereunder, nor shall any single exercise by any Party of any right hereunder preclude any other or further exercise thereof.  The rights and remedies herein provided are cumulative and not exclusive of any right or remedies provided by law.

**1.13.    Binding on Successors.**  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, administrators, etc. of each of the Parties, including but not limited to any successor trustee and the Debtor after the case is dismissed or closed.

**1.14.    No Assignments or Delegation of Rights.**  Neither Party hereto has assigned or delegated any rights to any other party or person any of the rights or interests related to any claim which may be subject to the terms of this Agreement.

**1.15.    Further Assurances.**  The Parties shall take all further acts and sign all further documents necessary or convenient to effectuate the purpose of this Agreement.

**1.16.    Full Authority to Sign Agreement.**  Any individual signing on behalf of any Party hereto expressly represents and warrants to each other Party that he or she has full authority to do so and to bind such Party hereto and, in the case of the Trustee, to bind the Estate, subject only to approval of the Bankruptcy Court.

**1.17.    Parties to Bear Own Costs.**  Each party shall be responsible for the payment of its own costs, attorneys' fees, and all other expenses in connection with negotiation, preparation, execution, and approval of this Agreement.

**1.18.    Recitals Acknowledged.**  The Recitals are true and correct to the best of the Parties' knowledge, and hereby adopted by the Parties.

**1.19.    Notices.**  Any notice by any Party to any other Party may be made by e-mail and delivered to the other Party at the address below until written notice of a different email address is given by the Party.  Any payments to be made pursuant to this Agreement shall be deemed made only upon actual receipt.

<u>To the Trustee</u>:
Timothy J. Yoo, Bankruptcy Trustee for Law Offices of Brian D. Witzer, Inc.
c/o Levene, Neale, Bender, Yoo & Golubchik L.L.P.
2818 La Cienega Ave.
Los Angeles, CA 9 0 0 3 4
TJY@LNBYG.COM

<u>with copies to</u>:
Monica Y. Kim
Levene, Neale, Bender, Yoo & Golubchik L.L.P.
2818 La Cienega Ave.
Los Angeles, CA 9 0 0 3 4
MYK@LNBYG.COM

<u>To LNT Law</u>:
Jamal Tooson
Lessem, Newstat & Tooson LLP
3450 Cahuenga Blvd., Suite 102
Los Angeles, CA 90067
JTOOSON@INLEGAL.COM

IN WITNESS WHEREOF, the Parties hereto hereby execute this Settlement Agreement as of the date of final signature below.

DATED:  October 6th, 2023

LAW OFFICES OF BRIAN D. WITZER, INC.

By:_____

Timothy J. Yoo, Chapter 7 Trustee

*Hoeft Settlement*

DATED: September __, 2023

LESSEM, NEWSTAT & TOOSON LLP

By: _____

Jamal Tooson

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **Notice Of Motion And Motion For Approval Of Compromise Of Controversy With Leesem, Newstat & Tooson LLP Pursuant To Rule 9019 Of The Federal Rules Of Bankruptcy Procedure; Memorandum Of Points And Authorities; Declaration Of Timothy J. Yoo** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 10, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Richard T Baum    rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com
- Reem J Bello    rbello@goeforlaw.com, kmurphy@goeforlaw.com
- Michael Jay Berger    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- Christopher L Blank    chris@chrisblanklaw.com
- Michael W Brown    mbrown@hrhlaw.com
- Christopher Crowell    ccrowell@hrhlaw.com
- Sheila Esmaili    selaw@bankruptcyhelpla.com
- Jeremy Faith    Jeremy@MarguliesFaithlaw.com, Helen@MarguliesFaithlaw.com;Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- David S Hagen    davidhagenlaw@gmail.com
- Monica Y Kim    myk@lnbyg.com, myk@ecf.inforuptcy.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Dare Law    dare.law@usdoj.gov
- Elan S Levey    elan.levey@usdoj.gov, julie.morales@usdoj.gov
- David W. Meadows    david@davidwmeadowslaw.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Carmela Pagay    ctp@lnbyg.com
- Annie Y Stoops    annie.stoops@afslaw.com, yvonne.li@afslaw.com;kevin.chen@afslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Brian D Walters    bwalters@pooleshaffery.com, rkhudir@pooleshaffery.com
- Dylan J Yamamoto    dylan.yamamoto@arentfox.com
- Timothy J Yoo    tjy@lnbyb.com
- Timothy Yoo (TR)    tjytrustee@lnbyg.com, tjy@trustesolutions.net
- Steven Zelig    slz@brentwoodls.com

**2.  SERVED BY UNITED STATES MAIL**: On **October 10, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*None.*

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 10, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                           **F 9013-3.1.PROOF.SERVICE**

1    email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

2    *None.*

3    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

4

| October 10, 2023 | Rebecka Merritt | /s/ Rebecka Merritt |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**